## CODDINGTON *vs.* DAVIS and others.

In a strict and technical sense, the term *protest* when used in reference to commercial paper, means only the formal declaration drawn up and signed by a Notary, but in a popular sense and as used among men of business. it includes all the steps necessary to charge an endorser.

Therefore, where an endorser of a note, before its maturity, wrote to the holder, saying: "Please not protest T. B. C.'s note due, &c. &c., and I will waive the necessity of the protest thereof," *held,* that this dispensed with a demand of the maker and notice to the endorser.

A demand of payment from the maker of a note, and notice to the endorser, are sufficient to charge the endorser, without a technical and formal protest.

Where two instruments are executed on different days, relating to the same subject matter, and the one last executed refers to and is based upon the former one, in arriving at the intention of the parties in the latter instrument, both should be read and construed together; and the general words, used in the last, should be restricted so as to conform to the intention of the parties as derived from an examination of both instruments.

Accordingly, where the maker of a note made an assignment to one of the holders for the benefit of his creditors, in which the *endorser,* was named and preferred as a creditor to the amount of the note, and the *holders* were named and preferred as creditors on another account, but were no where set down as creditors in respect to the note, and the holders in conjunction with other creditors afterwards executed to the maker an instrument referring to the assignment, and agreeing in consideration thereof, and of one dollar, to discharge the maker from *all claims and demands* existing in their favor respectively against him, over and above what they might realize under the assignment, on his agreeing at the same time to pay the balance of their debts in seven years, and the maker at the same time gave to the holders his written promise to pay such balance in seven years; *held,* that the claim of the holders to recover the note of the maker was not discharged or suspended, the instrument being regarded as only applicable to their other demand against the maker; and therefore *further held,* that their right to recover against the endorser was not affected by such instrument.

On error from the Supreme Court. Davis, Brooks & Co. sued Samuel Coddington in the Superior Court of the city of New York as the endorser of a promissory note for $10,000, made by Thomas B. Coddington, which bore date Dec. 31, 1839, and became due Feb. 2, 1840. On the trial it was proved that on the 28th of January, 1840, the defendant wrote to the plaintiffs as follows:

"Messrs. DAVIS, BROOKS & CO.—GENTS.: Please not protest T. B. Coddington's note due 2d February, 1840, for ten thousand dollars, and I will waive the necessity of the protest thereof; and oblige,      Yours,

SAM'L CODDINGTON."

The plaintiffs having rested, the defendant moved for a nonsuit on the ground that no demand of the maker and notice of non-payment to the endorser had been proved. The Court held that the above letter dispensed with the necessity of making such proof, and denied the motion. The defendant excepted.

It was then proved on the part of the defendant, that on the 23d day of January, 1840, the maker of the note assigned his property to one Charles Davis, one of the plaintiffs, in trust to pay his debts, preferring certain creditors named in schedule A, annexed to the assignment. The assignment and schedules were read in evidence, from which it appeared that the defendant was named as a creditor in schedule A in the sum of $10,000, the amount of the note in question, and in two other sums of smaller amount. The plaintiffs were named in the same schedule as creditors in the sum of $1000, and in schedule B in two other sums of $1100 and $900; but they were no where named as creditors in respect to the note in question. On the day after the assignment was executed (January 24th) the defendant drew an order upon the assignee, in favor of the plaintiffs, directing him to pay over to them all monies which he might realize out of the fund assigned on account of the defendant, to the amount of $10,000. This order was accepted by the assignee, and in pursuance thereof he had paid over to the plaintiffs previous to the trial about $2,800, which they had applied to the note.

On the 8th of February 1840, the plaintiffs and other creditors of Thomas B. Cloddington executed to him an instrument without seal in these words: "Whereas, Thomas B. Coddington, of the city of New York, is indebted or liable to us for certain debts or liabilities heretofore incurred by said Coddington, and said Coddington has made an assignment of

his property to Charles Davis, Esq. for the benefit of us and other creditors of said Coddington; Now in consideration of one dollar paid to us by said Coddington, the receipt of which is hereby acknowledged, and in consideration of said assignment and a promise on the. part of said Coddington hereinafter mentioned, We, the creditors, whose names are hereunto subscribed, do hereby release, discharge and forever acquit said Coddington, his executors, &c., from all claims, demands, liabilities, engagements, judgments, and other responsibilities now · existing against said Coddington, beyond what we shall respectively realize of said claims, &c., from said assignment to Charles Davis, dated the 23d of January, 1840; we receiving or assenting to the conditions of said assignment, and coming under the same for a full and perfect discharge of said claims, &c., said Thomas B. Coddington, in consideration of the above, giving us severally a written promise to pay us at the expiration of seven years from the date of this instrument, whatever balance of said claims should remain unpaid, out of the assets of said assignment. Witness our hands, this eighth day of February, 1840.

Signed by Davis, Brooks & Co., and by other creditors.

Simultaneously with the execution of the above instrument Thomas B. Coddington executed to the plaintiffs the written promise therein referred to, in these words: "I hereby promise to pay Messrs. Davis, Brooks & Co. whatever they may not realize from my assignment to Mr. Charles Davis, on account of my indebtedness to them, in notes, books, accounts, endorsements, or otherwise at the expiration of seven years from the date hereof. THOMAS B. CODDINGTON."

"New York Feb. 8, 1840."

The above matters being given in evidence, the defendant's counsel insisted, that the written instrument of the 8th of February, was a valid release and discharge of the maker of the note, and that thereby the defendant, the endorser, was discharged from his liability. Also that said written instrument in connection with the maker's promise to pay any balance, &c., in seven years, was a valid extension of time to the

<small>Coddington *v.* Davis.</small>

maker of the note, which discharged the endorser.   Also that the plaintiffs having by said instrument agreed to come in under said assignment for a full and perfect discharge of all their claims against said Thomas B. Coddington, could not sue on the note or endorsement until the assignment was closed.   The Superior Court overruled these positions, and the jury found a verdict for the plaintiffs.   The defendant excepted and had a bill of exceptions duly signed and sealed. The Supreme Court on writ of error affirmed the judgment of the Superior Court.   (*See* 3 *Denio* 16.)

*S. Stevens* and *L. Livingston* for plaintiff in error.

*Charles O'Connor* for defendants in error.

GARDINER, J.   The Plaintiff in error, the defendant below, was the endorser of a note made by Thomas Coddington for $10,000.   Thomas Coddington failed, and on the 23d January, 1840, made an assignment to Davis, one of the firm of Davis, Brooks & Co., the endorsees and holders of the note and the plaintiffs below.   On the 28th of January, and prior to the maturity of the note, the defendant with full knowledge of the above facts, wrote the following letter :

"Messrs. DAVIS, BROOKS & Co.—GENTS : Please not protest T. B. Coddington's note due 2d February, for ten thousand dollars, and I will waive the necessity of the protest thereof ; and oblige respect'ly, &c.,

SAMUEL CODDINGTON."

The construction of this letter is the first important question presented in the cause.

The term protest in a strict technical sense is not applicable to promissory notes.   The word, however, as I apprehend, has by general usage acquired a more extensive signification, and in a case like the present includes all those acts which by law are necessary to charge an endorser.   When among men of business a note is said to be protested, something more is understood than an official declaration of a notary.   The expres·

sion would be used indifferently to indicate a series of acts necessary to convert a conditional into an absolute liability, whether those acts were performed by a mere clerk or a public officer. It is obvious that the word was used in its popular acceptation by the defendant below. He requests the endorsees " not to protest the note, and that he would waive the *necessity* of the protest thereof."

The protest to which the endorser alluded was something " necessary" to be done, something also for the benefit of the endorser, for he assumed to waive it. It could not therefore be a memorandum, or declaration made by a notary, because neither of them were required. Nor could he have intended to waive that which whether performed or omitted, his right would in no manner be affected. The only things necessary on the part of the endorsees was a demand of payment of the maker, and notice to the endorser. By waiving the necessity of protest the defendant dispensed with both, or his communication is destitute of all meaning.

It was argued indeed that the defendant might have referred to the notarial certificate authorised by statute. But this certificate is made *prima facie* evidence of a demand and notice in favor of the endorsees. It is for their benefit. The defendant in making such reference must have *supposed* that the certificate was *necessary evidence,* because he waives the *necessity* of a protest, which according to the argument is equivalent to dispensing with the *necessity* of a *notarial certificate.* Now to every fair mind, waiver of proof necessary to establish a particular fact, is equivalent to an agreement to admit it. Whether therefore the defendant by waiving the necessity of a protest, intended to dispense with demand and notice, or with the evidence of them the result would be the same, and in either case he is concluded by his own stipulation from raising the objection taken upon the trial. I agree with the learned Judge who delivered the opinion of the Supreme Court, that the circumstances attending the written stipulation of the defendant confirm this view; but I prefer to rest my opinion upon the letter alone, as furnishing *prima facie*

evidence of an intent by the endorser to waive demand of payment and notice to which he was otherwise entitled.

Another important point is made by the defendant, that the written statement signed by the plaintiffs and others, dated 8th February, 1840, was a valid discharge by the plaintiff of Thomas Coddington the maker of the note from all liability thereon, and consequently of the endorser. On the 23d of January, 1840, Thomas Coddington executed his assignment to Davis, and directed his assignee to pay and discharge the *debts owing* by *the assignor* contained in the schedule marked A. in equal proportions. In this schedule we find:

SAMUEL CODDINGTON, for endorsement,　　$10,000
"　　　　"　　　　　　　"　　　　.1,854
"　　　　"　　Balance of account,　　2,178

Taking the schedule in connection with the assignment, it will be perceived, that the debts to the defendant for endorsements and for private account, are placed upon the same footing as debts *owing by the assignor* to the defendant, and both are directed to be paid absolutely. It is obvious therefore that the $10,000 endorsement, which is admitted to be the note in question, was understood by the parties to the assignment to be the debt of the defendant and treated accordingly. This was on the 23d January : on the 24th, the defendant in writing, directed Davis as assignee to pay to the order of Davis, Brooks & Co., all *monies* that should be received by him as assignee *on his account*, to the extent of $10,000 value received.

By this act the defendant not only assented to the assignment, but as it appears to me, distinctly recognised the relation in which he was placed by that instrument as creditor to the assignor to the amount of the $10,000 unconditionally, and of course liable for the same amount to the plaintiffs. He directed the payment of a sum equal to the note, not only out of the fund set apart in the assignment for that purpose, but out of the proceeds of the property exclusively applicable to the discharge of a debt due to him individually, for a bal .

ance of account. In a word, he recognized · this as a debt due from Thomas Coddington to *himself*, by claiming under the assignment by which it was so declared, and as a debt due *from him* to the *plaintiffs* by a voluntary application of his private funds to its payment. In conformity with this view of his rights and liability, we find him on the 28th day of January, the date of his letter to Brooks, Davis & Co., waiving the necessity of protest, and thus converting a conditional into an absolute liability upon his part, for the payment of this note to the plaintiff.

Under these circumstances the discharge of February 8, 1840, was executed by Davis in behalf of Davis, Brooks & Co., and by some others of the creditors of T. Coddington.

This instrument, which is without seal, recites in substance, that T. Coddington was *indebted* or *liable* to the subscribers, and that he had made an assignment to Davis for the *benefit* of the subscribers and other *creditors*, and in consideration of one dollar, of said assignment, and of a promise to pay any balance that might not be received under the same, in seven years—the subscribers did release and discharge and forever acquit the said T. Coddington, from all claims, demands, liabilities, engagements, judgments, and other responsibilities then existing against him, beyond what· they might realize on said claims, &c., from said assignment; "We," the instrument proceeds, "receiving and assenting to the *conditions* of said assignment, and *coming in under the same*, for a full and perfect discharge of our said claims. The said Coddington, in consideration of the above; giving to us his written · engagement to pay the balance," &c.

It is apparent that this discharge refers to and absolutely adopts the assignment, with all its conditions, and provisions as its basis. One of these conditions was, that the defendant should be paid out of the fund, as a preferred creditor, the amount of this note as a debt due to *him*. To this the parties to the discharge expressly assented. When, therefore, it was recited in that instrument that Thomas Coddington was indebted or liable to Davis, Brooks & Co., for certain *debts*,

and that the former had made an assignment for the benefit of the latter as *creditors*, the parties could not have referred to this demand which they had agreed to describe and had actually inventoried as the debt of another.

It may be granted that independent of the assignment, the plaintiffs as to this note were the principal creditors of Thomas Coddington. But we must seek the intention of the parties in their writings, not in the relation previously existing. When therefore the assignment, as we have a right to infer, purposely omits Brooks, Davis & Co., and substitutes the defendant as the *creditor* to whom this *debt* was *owing*; the discharge upon authority as well as the plainest principles of justice should be restricted to the relations established by the instrument to which it refers and expressly adopts. (*Tayler* vs. *Homersham*, 4 *Maule* 1 *Selwyn* 422; 23 *Com. Law R.* 50, 7 *Com. Law* 205, 1 *Cowen* 123, 126.)

The engagement entered into by Thomas Coddington at the time of the execution of the release confirms this view. By that he promised to pay Brooks, Davis & Co., whatever they might not realize from his assignment, on account of his *indebtedness to them.* This debt of $10,000 had been inventoried as due to S. Coddington. To suffer Brooks, Davis & Co. to share equally with the creditors of the second class, upon the ground that this debt was due to them also, would be virtually a fraud upon those creditors, upon the assignor, and those who executed the discharge with Brooks, Davis & Co. These creditors with justice could say to the plaintiffs, that with their concurrence the assignor had appropriated property for the payment of this debt to the defendant. You have elected to claim through him, to which he has assented, and you are bound by your election.

It is unnecessary therefore to consider the objection of a want of consideration, &c., raised to this discharge. Viewing it as legally binding upon the parties, it does not extend to this demand, and cannot have the effect either to discharge or extend the time of payment of the note in question. The judgment of the Supreme Court should be affirmed.

BRONSON, J. also delivered an opinion in favor of affirmance; and JEWETT, Ch. J., JONES and WRIGHT, Js., concurred.

RUGGLES, J., dissenting. If the instrument called the discharge, dated on the 8th of February, 1840, signed by *Davis, Brooks & Co.*, did not absolutely and entirely discharge *Thomas B. Coddington* from all liability on the ten thousand dollar note as maker, it operated, beyond a doubt, as it appears to me, to extend the time for the payment of that debt until the expiration of seven years from the date of the instrument. So far as respects the right of *Davis, Brooks & Co.* to recover against *Samuel Coddington* the endorser, it is immaterial whether it is an entire discharge or an extension of time. In either case the action against the endorser is barred, and unless the suit on the note could have been maintained by *Davis, Brooks & Co.* against *Thomas B. Coddington*, the maker, then action against *Samuel Coddington*, the endorser, must fail.

Want of consideration furnishes no good ground of objection to the validity of the discharge. The pecuniary consideration expressed in it, is alone sufficient, although nominal in amount, it was inserted doubtless for the purpose of giving validity to the instrument, and is as effectual for that purpose as if it had been a larger sum. If the instrument had been under seal, the parties would have been estopped from denying it. Not being under seal that rule may not apply. But the recital in the instrument is evidence of payment until proof be given to the contrary, and no such proof was offered. The sum of one dollar, expressed as the consideration, is not a part of the debt to be paid, but a separate and independent sum; and the creditors cannot now avoid this agreement on the ground of want of consideration, without committing a manifest fraud upon Thomas B. Coddington. The assignment is also a sufficient consideration to support the agreement. If it should be answered that this was a past consideration, not appearing on the face of the instrument to have been made at the request of the creditors, the answer is, that if the objection had been made at the trial, no jury would have hesitated

a moment, from the beneficial nature of the transaction, to have inferred a request.

Let us then look at the discharge with a view to ascertain whether *Davis, Brooks & Co.* could, after having executed it, and within the seven years mentioned in it, have sued *Thomas B. Coddington*, the maker, upon the note in question.

First. It was admitted on the argument by the counsel for the defendants in error, that the words in the body of the instrument, if considered alone, were abundantly sufficient to comprehend and include the note in question, and to acquit the maker of any liability at least during the period of seven years. It purports "to release, discharge, and forever acquit him from all claims, demands, liabilities, judgments, and other responsibilities now existing against said Coddington." But these comprehensive words were supposed to be limited and restrained in their effect by something in the recital. Let us refer to it. The recital is, "that Thomas B. Coddington is indebted to us for certain debts and liabilities heretofore incurred." *This certainly embraced the* $10,000 *note.* The recital then proceeds, as follows: "And said Coddington has made an assignment of his property to *Charles Davis, Esq., for the benefit of us* and other creditors of said Coddington," &c. Now the question arises whether the assignment was made for the benefit of *Davis, Brooks & Co.*, as well in respect of this $10,000 debt, as with respect to the other debts he owed them, and which were mentioned in the schedules. The assignment was for the benefit of those who were to take the dividends, and if they were entitled to the dividends on that debt as well as on the others, then it follows that the recital, instead of excluding the $10,000 debt from the operation of the discharge, brings it conclusively within its scope and meaning.

Here it becomes necessary to refer to the assignment and schedule annexed to it; for it was rightly said by the Supreme Court in its opinion on this case, that the assignment being referred to in the discharge, both papers should be examined for the purpose of ascertaining the intention of the parties.

The trust created in the assignment is that the assignee, "out of the monies realized from the property, shall pay and discharge the debts owing by me, the said *Thomas B. Coddington*, mentioned and contained in the schedule hereto annexed, marked A, and if there should not be sufficient to pay said debts in full, then to pay them in equal proportions according to their amounts."

Schedule A is as follows:

| | | |
|---|---|---:|
| Samuel Coddington for endorsement, | | $10,000 00 |
| do. | do.     do. | 1,185 44 |
| do. | do. for balance of account | 2,178 40 |
| | | 13,363 84 |
| Davis, Brooks & Co., | | $1,000 00 |
| James Taylor for account, | | 373 79 |
| Joseph Meeks for rent, | | 250 00 |

It was assumed, upon the argument, and treated by all parties as an undisputed fact, that the $10,000 debt in schedule A, opposite the name of Samuel Coddington, as endorser, is the debt due upon the note in question; and it is to be observed that although the debt is set down in the schedule opposite the name of Samuel Coddington, he is not set down as a creditor in the ordinary sense, but he is shewn by the entry to be an endorser. It does not appear, however, in the case that his name was put into the column of creditors by his act or with his consent. It was the act of the parties to the assignment, and not his; and they knew that he was in fact an endorser merely and not a creditor. But the debt was nevertheless preferred. It stood at the head of the preferred schedule. And for whose benefit? or in other words, who were entitled to the dividends accruing upon it under the assignment? Most undoubtedly *Davis, Brooks & Co.*, and they only. They were the creditors. *Thomas B. Coddington* was the debtor, and *Samuel Coddington* the surety. It is a well settled principle of equity that the creditor is entitled to the benefit of all the securities which the principal debtor has given to his surety; and if it be supposed that one of the ob-

jects of the assignment was to secure Samuel Coddington, as endorser, the assignment immediately enured to the benefit of *Davis, Brooks & Co.*, the creditor; and they were as much entitled to the avails of the assignment, and to the control of it, as if their names had been put down in the schedule as creditors. (*Burge on Suretyship* 324; 1 *Story's Eq. Com., Sec.* 502; *Pitman on Pr. and Surety* 89, 113.)

As soon as a dividend was declared, the share set apart to this debt was payable instantly to *Davis, Brooks & Co.* The assignee (one of that firm) had the power and the right so to apply it. *Davis, Brooks & Co.* could lawfully require it to be so applied. *Samuel Coddington* had no right to require it to be paid to him. The effect of the assignment, therefore, is in all respects the same as if *Davis, Brooks & Co.* had been named in schedule A, instead of Samuel Coddington, as creditors for the $10,000 debt; and without reference to the order by which *Samuel Coddington*, on the 24th of January, directed the assignee to pay the dividends to them, the assignment, was as much for their benefit in regard to this debt as if *Samuel Coddington's* name had been omitted, and theirs inserted as creditors; and being so, the note in question comes as well within the letter as within the spirit of the recital in the discharge. The recital refers to the assignment in genral terms, but not to the schedule specially. It does not point to the debts *standing in the name of Davis, Brooks & Co.*, as the debts on which the discharge was to operate, but to the debts due from T. B. Coddington to them, and upon which the assigned property was to be applied. Indeed, nothing can be clearer to my mind than that the discharge was to operate upon all the debts on which the creditors who signed it were entitled to dividends. The assignment was mainly the consideration on which the discharge was founded, and upon no other construction can the two instruments have a consistent and harmonious operation. It will be borne in mind that the order made by Samuel Coddington, on the 24th of January, directing his dividends to be paid to *Davis, Brooks & Co.*, had no effect whatever upon the dividend to be paid on the

$10,000 debt. Before that order was given, and without any aid from it, that dividend belonged to them, by the legal operation of the assignment. But the order was effectual to give to *Davis, Brooks & Co.* the dividends upon the other debts in schedule A standing in *Samuel Coddington's* name; and for that purpose only it ought to be understood to have been made, because for every other purpose it was a dead letter.

In the opinion delivered in the Supreme Court it is said to be evident, from what transpired between *Samuel Coddington* and the plaintiffs, that both the Coddingtons treated this as the proper debt of the defendant to the plaintiffs, and that it was not at that time considered as a debt against T. B. Coddington. But I find no evidence in the case shewing that *Samuel Coddington* so treated it. It has before been observed that the insertion of his name in schedule A, in connection with the note in question, does not appear to have been his act, or done with his assent. His waiver of the protest recognizes himself as the endorser, and Thomas B. Coddington as the principal debtor. The purpose of the order to pay over the dividends to the plaintiffs, has already been adverted to; and the discharge of *Thomas B. Coddington* by the creditors appears, as far as the evidence goes, to have been made without his knowledge or concurrence. There never was any assumption on his part to pay the debt except in his character as endorser; and it is in that character only that the plaintiffs have sought in this suit to make him responsible; and unless the note in question then was and now is due from *Thomas B. Coddington,* as principal debtor, they must fail.

If the assignment of the 23d of January, and the order made by *Samuel Coddington* on the following day, should, from the dates or otherwise, be regarded as part of the same transaction, and be looked upon as evidence that *Samuel Coddington,* as well as the parties to this suit, were privy to the execution of the assignment and to the making of schedule A, then, on that hypothesis, another conclusion follows equally fatal to the plaintiffs. It is this, that it must have been understood and agreed between all the parties at the time that

*Davis, Brooks & Co.* were to have the dividends on the $10,000 debt. This effectually brings that debt within the terms of the discharge and its recital. ·

It was urged upon the argument that *Davis, Brooks & Co.* could not have intended to discharge a solvent endorser by giving time to the insolvent maker of the note in question.

The solvency of the endorser is not a fact proved in the case. But if it were proved, the argument is entitled to very little weight when applied to the consideration of a written instrument. But when considered in connection with other facts proved in the case, it falls to the ground entirely. When the discharge was given, *Charles Davis,* one of the plaintiffs, held the assignment of property amounting nominally to $32,000. The preferred debts, of which the note in question was a part, amounted to less than $15,000 ; and by *Samuel Coddington's* order of the 24th of January, the plaintiffs became entitled to receive the dividends on other preferred debts due to him of between $3,000 and $4,000, and to apply them to the $10,000 note in question. There was no proof of the insufficiency of the property assigned to pay the entire debt. Part of the assigned property remained, at the time of the trial, undisposed of, and the assignment had not been closed.

There is another paper in this case not yet mentioned which throws light on the question between the parties. It is the promise which Thomas B. Coddington gave in writing to the plaintiffs, at the time they executed the discharge, to pay at the expiration of seven years, the balance of his indebtedness to them which might be left after deducting what might be realized from the assignment. A reference to that instrument will shew that like the discharge and its recital, it was evidently intended to include the note in question. ·

Finally. From reading the three instruments together, that is to say the assignment and schedules, the discharge and the written promise of T. B. Coddington, I am brought to the following conclusions :

First. That by the assignment and schedules, without reference to any other paper, *Davis, Brooks & Co.* were entitled

to the dividends on the $10,000 debt, mentioned in schedule A as the creditors of *T. B. Coddington,* although that debt was set down against the name of Samuel Coddington as endorser.

Secondly. That by the recitals in the discharge, *Davis, Brooks & Co.* referred to the debts due from T. B. Coddington to them, of which this was the principal one, and therefore include this debt; that they do not refer to the debts set down to the names of *Davis, Brooks & Co.,* and therefore do not exclude it.

Thirdly. That the operative words in the body of the discharge are amply sufficient to include the debt in question, and do include it.

Fourthly. That the obvious meaning of the discharge was, that it should operate on all the debts on which the creditors who signed it were respectively entitled to dividends; and.

Fifthly. That *Davis, Brooks & Co.* in conformity with this construction, took Thomas B. Coddington's written promise to pay, at the end of seven years, the balance that might remain due on this note, and on his other debts, after deducting what might be realized from the assignment.

I am therefore of opinion that the judgment of the Supreme Court should be reversed, and that a new trial should be awarded.

GRAY and JOHNSON, Js., were also for reversal.

Judgment affirmed.