ROGERS *et al.* v. PHELPS *et al.*

(*Supreme Court, General Term, First Department.* May 9, 1890.)

1. CORPORATIONS—STOCKHOLDERS—RIGHT TO SUE.
    Plaintiffs, stockholders of and owners of scrip in a land company, sued the company, and the directors thereof, to secure an accounting for $1,125,000 in land-scrip issued by the company, and distributed among the stockholders who were willing to receive it. The complaint alleged that certain scrip of the company, amounting in par value to over $4,000,000, had been retired and rendered void; that the directors had distributed, by way of dividend, $1,125,000 of the retired land-scrip among its stockholders, nearly all of whom had accepted it; that subsequently defendants had permitted such stockholders to exchange the scrip for land of the company, for the face value of the scrip, to the extent of about two-thirds of the selling price of the lands; and that thereby the company had been deprived of its land to the value of about $1,125,000, the proceeds of which should have been used for the redemption of other land-scrip. *Held*, that as the action was brought, not for any loss or injury to plaintiffs, but to sustain the rights of the company alone against the misconduct of its directors, the right to maintain it depended upon plaintiffs showing a misappropriation of the scrip by the directors.

2. SAME—REISSUE OF SCRIP BOUGHT IN.
    The scrip certificate provided that it was receivable by the company for 75 per cent. of the price of its land, at regular selling rates, and was redeemable, at the option of the company, at any time, by the payment of its par value in cash to the holder. *Held*, that the purchase of scrip by the company without intending to cancel or retire it would not subject the company to the inability to use it again for the promotion or security of its business or interests, and that the distribution of the scrip so purchased among the stockholders, *pro rata*, for immediate use by them, to avoid the danger of forfeiture of the lands under the laws of the state where they were situated, was not an unlawful or unauthorized diversion of the company's assets and property.

VAN BRUNT, P. J., dissenting.

Appeal from special term, New York county.

Action by Jacob S. Rogers and Thomas Benny against the New York & Texas Land Company, Limited, impleaded with William Walter Phelps and others as directors of the company. From a judgment dismissing their complaint plaintiffs appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

Davies & Rapallo and Edward Lyman Short, for appellants. Noah Davis, Thomas G. Shearman, and Redfield & Lydecker, for respondents.

DANIELS, J. The suit was commenced and prosecuted to secure an accounting, by the individual defendants, as directors of the defendant the New York & Texas Land Company, for $1,125,000 in land-scrip issued by the company. This scrip had been purchased by the company, and after its purchase a resolution was adopted for its distribution among the stockholders of the company at the rate of $37.50 to each share of the stock. A circular was afterwards issued, announcing the determination of the directors of the company to make this distribution; and it finally was made, and the scrip distributed, proportionately to the amount of stock held, among a large majority of the persons owning the stock of the corporation. The plaintiffs in the action declined to receive their proportion of the scrip under the resolution, amounting to the nominal sum of $36,860, and brought an action to restrain the distribution of the residue of the scrip among the other shareholders. That action was against the company alone, and in its behalf a demurrer was interposed to the plaintiffs' complaint; and the action was finally held to be sustainable by the plaintiffs, so far as it depended upon their rights as owners of land-scrip of the company. Rogers v. Land Co., 1 N. Y. Supp. 908. But proceedings followed this decision under which the scrip was distributed among the stockholders who were willing to receive it; and this action was then brought against the directors to oblige them to account to the company for the value of the scrip in this manner distributed, and the former suit was abandoned.

In support of the appeal the ground has been taken that the plaintiffs themselves, as stockholders and owners of scrip in the company, are entitled to maintain the action because of the injurious effects upon their rights and interests produced by this distribution of the land-scrip. But the complaint has been so framed as in no manner to place the right to maintain the action upon any injury or loss resulting to the plaintiffs themselves; but the ground of action, as it has been disclosed, is solely the alleged injury to the corporation by reason of this distribution of the scrip in controversy. So much of the complaint as precedes the thirteenth subdivision is devoted to a statement of the facts attending the acquisition of the land, the formation of the company, and the distribution of the scrip among the stockholders, with the averment added that the scrip purchased prior to the 13th of April, 1887, amounting in par value to over the sum of $4,000,000, had been retired, and rendered null and void. It is then alleged in the complaint that, at a meeting of the directors held on that day, they, understanding their proposed action to be illegal and wrongful, voted to distribute, by way of dividend, among the stockholders of the company, $1,125,000, nominal par value, of the retired, null, and void land-scrip of the company, to be used in locating and acquiring lands of the company conformably to the terms and language contained in the scrip; that in this manner these defendants had illegally and wrongfully directed and provided for an illegal distribution of this scrip. It is further averred that the scrip was actually distributed as provided by this action of the directors; that it had been accepted by nearly all the stockholders of the company, and that subsequently the defendants had permitted the stockholders who had accepted it to exchange the scrip for land of the company, for the face value of the scrip, to the extent of three-fourths or two-thirds of the selling price of

the lands; and that lands of the value of over $1,100,000 had been distributed or disposed of under this scrip. The further averment was then made that the company, by the action of these directors, had been deprived of its land to the value about $1,100,000, the proceeds of which should have been used to the redemption and retirement of other land-scrip of the company. These allegations are followed by a demand for judgment consistent only with this theory of the case. The judgment asked for is that the directors should be decreed to pay to the company this sum of $1,100,000 with interest, or such sums as should be ascertained to be the fair value of the scrip illegally attempted to be issued, with interest, and actually delivered, or the value of the lands of the company exchanged for such scrip, and that the company should be decreed to apply the moneys to the retirement of outstanding valid land-scrip, or to purchase for cancellation other outstanding scrip, under published notice and sealed proposals, at the lowest price at which it might be offered. There was a further demand for such further or other relief as the nature of the circumstances of the case might require, or be proper to fully establish and enforce the rights of the plaintiffs and other scrip-holders.

It is true that the demand for judgment is of no special importance in the consideration of this case, for the reason that the defendants have answered the plaintiffs' complaint, (*Andrew* v. *Steam-Boat Co.*, 11 Hun, 490; *Murtha* v. *Curley*, 90 N. Y. 372, 377; *Graham* v. *Read*, 57 N. Y. 681; *Truesdell* v. *Sarles*, 104 N. Y. 164, 10 N. E. Rep. 139;) and it has been referred to for no other object than to exhibit, as it does, the understanding of the plaintiffs themselves as to the nature of their complaint, and the grounds of their action. Indeed, it was not necessary that this attention should be bestowed upon the demand; for it clearly appears by the language of the complaint that the action has been brought to vindicate and sustain the rights of the company alone against the alleged misconduct of its directors, and to secure from them that measure of redress which will furnish and supply ample indemnity to the company for any injury sustained by it through the alleged misappropriation of its property. And that such an action may be maintained, where a proper case shall be disclosed, by the stockholders, or others interested in the property of the corporation, was held in *Brown* v. *Railroad Co.*, 27 Hun, 342; and many other authorities might be cited, if that were necessary, in support of the same proposition. And where the directors, or a majority of them, whose conduct is drawn in question, are still in charge and control of the corporation itself, the suit may be instituted and prosecuted without a previous request made upon the corporation to commence and prosecute such an action. But in this case, at a meeting held on the 9th of August, 1887, a resolution was proposed that the company should commence such an action. This was a meeting of the stockholders; and the resolution was lost, having received but 981 votes in its favor against 18,142 votes opposed to it.

The right of the plaintiffs to maintain the action in behalf of the corporation necessarily depends upon the truth of their allegation that this scrip, amounting to the nominal par value of $1,125,000, had been misappropriated by the action of these directors; and, when the other action was before this court for decision, it was considered that the distribution of this scrip among the stockholders of the company was not such a use of it as the directors could legally make. This decision proceeded upon the ground that the scrip-holders of the company's land-scrip were in a position to complain of this use or distribution of this scrip. That action was considered to be maintainable by the plaintiffs only in their capacity of scrip-holders; and it may be, as to that class of individuals who were not stockholders also in the company, that in a proper case an action might be maintained. But as the facts are now presented the plaintiffs appear to be stockholders, as well as scrip-holders, in the company; and for that reason they could not be injured or prejudiced by the distribution of this scrip among the stockholders, as they possibly could be if

they had alone been holders of the land-scrip of the company; for the distribution of this land-scrip was intended to be made, and was directed to be made, among the stockholders of the company in proportion to the shares of stock held, respectively, by them.    There was no diversion, therefore, authorized, which in any manner would diminish or impair the rights or interests of the stockholders themselves in the assets or the property of the company.    Neither would the property of the company itself be diminished, either to its own prejudice or injury or that of the stockholders, by this distribution. In these respects the case appears quite different from its presentation by the complaint, which was alone before the court in the other action; for in this action issue has been taken upon the material averments contained in the complaint, and they have been made the subjects of proof, and the points to be decided are in no manner embarrassed by the omission or exclusion of anything properly bearing upon their consideration.    In the preceding action, even the scrip certificate itself was not before the court for its inspection or construction; and it could not then be seen that it had imposed no disability on the company to purchase and retain its scrip without cancellation or retirement, or afterwards to issue it again, in case the interests of the company or of its stockholders indicated the propriety of that act.    The scrip was in this form:

"THE NEW YORK AND TEXAS LAND COMPANY, LIMITED.

"No.————.                                                       $1,000.

"*Total Land-Scrip,* $6,000,000.

"This is to certify that ———— is the owner of land-scrip of the New York and Texas Land Company, Limited, to the amount of one thousand dollars, par value.    This certificate will be received by the company in payment for seventy-five per centum (75%) of the price of the company's land, at the regular selling rates to be by it fixed from time to time.    It is redeemable, at the option of the company, at any time, by the payment of its par value in cash to the holder.    This certificate is transferable by assignment in writing, by the owner or attorney, on the books of the company, at its office in the city of New York, or at any transfer agency thereof, and not otherwise, except that, when transferred and certified to bearer, it will pass by mere delivery, such transfer to be certified hereon by the company's transfer agent.    In witness whereof the said company has caused this certificate to be signed by its president and treasurer, with the seal of the company affixed.

"*Dated at the city of New York this ———— day of ————,* 188 .

　　[L. S.]                                        "————, President.

　　　　　　　　　　　　　　　　　　　　　"————, Treasurer.

"THE FARMERS' LOAN AND TRUST COMPANY, Register of Transfers.

"By ————, Sec'y.

"————, President.

"This certificate is exchangeable for others in multiples of one hundred dollars."

And, while it provided for this redemption by the company otherwise than by the location and conveyance of its land, it in no manner prohibited the company from afterwards using the scrip, as long as it remained uncanceled, for the promotion or security of its business or interests, where either object could in this manner be best attained.    And it was considered in *Brown* v. *Coal Co.*, 49 Pa. St. 270, that such scrip itself constituted the contract between the company and the holder.    Id. 273.    And if that principle should be applied to the disposition of this action, then there was no legal obstacle in the way of the company, after the purchase of the scrip in controversy, to retain it, without cancellation or retirement, to meet any contingency in its affairs which might suggest the necessity of the use and distribution which was actually, in this instance, made of it; for, where the company may be subjected to no prohibition, either expressed or implied, for the future use of instru-

ments of this character, they may be employed and disposed of to meet its necessities, or promote its interests. *Bank* v. *Bruce*, 17 N. Y. 507, 511; *Vail* v. *Hamilton*, 85 N. Y. 453, 457, 458; *Williams* v. *Manufacturing Co.*, 3 Md. Ch. 418, 452; *Dupee* v. *Water-Power Co.*, 114 Mass. 37, 43; *Barry* v. *Railway Co.*, 34 Fed. Rep. 829. And a purchase of the scrip without intending to cancel or retire it would not subject the company to the inability to use it again, if circumstances should arise indicating that use to be proper, as well as consistent with the rights of the stockholders and of the company itself. That would be an entirely different case from the one presented in *Bockes* v. *Hathorn*, 20 Hun, 503, where the instruments in controversy had actually been paid and satisfied.

To maintain the inability of the company, or of its directors, to direct a distribution of this scrip among the stockholders of the company, reliance has been placed upon a plan proposed to the persons interested in the property by a committee appointed for that purpose. Their action was taken in January, 1880; and, as a part of the plan which was recommended by them, it was stated that the corporation designed to be formed "should issue scrip to the amount of $6,000,000, to be divided *pro rata* among its stockholders, and to be receivable in payment of 75 per cent. of the price of its lands at its regular selling rates, with an option to the company to retire the scrip from time to time by the payment of its par value, and liberty to purchase it out of the company's surplus funds, under public notice and sealed proposals, at the lowest prices at which it may be offered." And the scrip now in dispute was obtained in the manner last mentioned, and it also could be under the language of the certificate itself. It was purchased in part from moneys obtained from the company from the sale of its lands, and, to the extent of $240,000, by money which the company had borrowed to be used in the purchase of land-scrip; and, when the demurrer in the other action was before this court, it was considered, as it was also held upon the trial of this action, that scrip so purchased could not afterwards be used by the company or its directors by way of distributing it in the nature of a dividend among its stockholders. And it may be that this clause in the plan reported by the committee for the management of the affairs of the parties interested, through the medium of a corporation, should be referred to as a restraint intended to be observed by the directors and the company itself; for, in instruments of the nature of the certificates issued, reference may be made to the proceeding or contemporaneous action bringing them into existence. *Coddington* v. *Davis*, 1 N. Y. 186; *King* v. *Barnes*, 109 N. Y. 267, 288, 16 N. E. Rep. 332.

But, even if this clause in the plan recommended and adopted should be held to be applicable to the power of the company or of its directors over these scrip certificates, it would not preclude the use which they in fact made of them; for it is not to be construed, neither was it in the decision of the appeal in the first action, as prohibiting the preservation of the certificates uncanceled and unretired, and their future use by the company if that should become necessary for its own protection, or the protection of those interested as stockholders in its capital and property. No contingency of the character of that which appears to have arisen in the affairs of the company was disclosed by, or contemplated in, the preceding action; and its effect upon the power and authority of the directors, accordingly, could not be considered nor determined at that time. But, under the issues framed by the answers, it has been made to appear that a necessity arose for the use of these certificates which could be successfully met and avoided in no other manner. It was shown for this purpose that the lands vested in the company which was formed under the plan recommended for adoption, and which was adopted, had previously been donated to other corporations created by the laws of the state of Texas. A portion was donated to the Houston & Great Northern Railroad Company, and another part to the International Railroad Company; and these

lands were mortgaged to secure bonds, and owned by the persons for whose benefit and protection the action already mentioned was taken.   These lands, together with other property, and shares in still another company, were conveyed and transferred to a committee for the benefit of the bonded creditors; and under the plan which was finally adopted, and resulted in the incorporation of the New York & Texas Land Company, these lands, shares, and interests were conveyed and transferred to that company.   It was made to appear in the course of the trial that, under the constitution and laws of the state of Texas, in which these lands were all situated, unless they were disposed of and conveyed, to the extent of one-half, at the expiration of 15 years from the time when they were donated, they would be forfeited to the state, and that a transfer of the lands from one corporation to another was not such a disposition of them as would relieve them from the effects of these provisions.   At the time when the resolution was adopted by the directors for the division of these certificates among the stockholders, the period was close at hand when this forfeiture could be insisted upon and enforced; and it was to prevent the forfeiture that the directors resolved to distribute these certificates among the stockholders of the company, for them to take up its land by the use of the certificates, and thereby avoid the risk of this forfeiture.   That was stated in the circular of the directors themselves, issued to the stockholders under the date of the 13th of April, 1887.   It was there stated that various plans for meeting the emergency had been considered, "and none has seemed so fair as to distribute the scrip which the company has bought from time to time among the stockholders with whose money it was bought, and to ask them to use it in exchange for land, as the means of divesting the company of the land whose title is thus threatened, and getting the land into their own possession."   The action preceding and resulting in this circular, and the distribution of the scrip, appears to have been taken in good faith for the protection of the company, and the owners of its stock, against the possibility of this forfeiture; and it was induced by a state of facts in no way brought to the attention of the court in the decision of the appeal taken in the first action.   And no language contained in the certificate itself, or in the plan recommended to the adoption of the beneficial owners of the property, prohibited the directors of the company from acting in this manner to meet and avoid the impending risk.   What this clause in the plan related to was the disposition which should be made of the certificates obtained through purchase by the company under an ordinary and known state of circumstances. It was not intended by it—neither was any intimation contained in it, or in the certificate itself—to prohibit the directors or the company from continuing the purchased shares in existence, and afterwards using them for the promotion of this object.   It was a necessity not contemplated by anything contained in the plan or in the certificate; but it was left to be met and avoided, as it best could be, by any means adapted to that end which might be possessed by the company.   These shares were purchased and acquired without cancellation or retirement, and they were in that condition when it was resolved by the board of directors to make this use of them.   Other certificates, which had been previously purchased and canceled, were not employed or distributed in this manner; but the distribution was limited to the certificates which the company had in its possession in an uncanceled condition, and it was therefore at liberty to use them to bring about this result.

But, even if it should be held that the directors had transcended their authority in directing and making the distribution which they did of these certificates, still there seems to be no substantial foundation for this action, for the reason that neither the company itself, nor the owners of its stock, were injured in the least degree by what appears to have taken place.   Nominally the company did in this manner enlarge its liability, but that was done only in favor of the owners of its stock, and for the protection and security of their

interests; and if the company, in any respect, should be considered to have been the loser, the owners of the stock gained precisely what the company had lost. That equalized the proprietary condition of each one of the stockholders, for they gained by the certificates all that the company had parted with. They were the persons who were the beneficial owners of the property whose title was vested in the corporation, and that ownership was in no respect interfered with or diminished by the division of these certificates among the stockholders.

It was further shown at the trial that no more than $980,300 in land-scrip certificates remained outstanding against the company, and that, to meet this scrip, it still owned 2,287,496 acres of land; and this land was equal, and part of it better, in quality, than that which had previously been disposed of by the company, and of the value of near $3,000,000. There was, accordingly, not the slightest difficulty in the way of the owners of the outstanding certificates—only three-fourths of the par value of which could be applied in the purchase of the land—securing complete satisfaction for those held by them out of the property still vested in the corporation; and this ability fully protected the owners of the company's land certificates, including the plaintiffs themselves, from all possibility of loss arising out of the distribution and use of the $1,125,000 of certificates forming the subject of the plaintiff's complaint. And this use of the certificates received the approval and sanction of 18,142 votes of the stockholders of the company, against the dissent of no more than 981 votes. It is probably true, if the distribution of these certificates among the stockholders were unlawful and injurious to even this minority of the company, that the action would rest upon a sound legal foundation; for a small minority of stockholders are entitled to protection and redress against the unlawful misconduct of a majority, whether large or small. But, as the facts have presented this case, no loss or injury could be incurred by the objecting minority through the action of these directors. If the certificates were unlawfully distributed, then the plaintiffs were justified in refusing to receive those apportioned to the shares of stock held by themselves, and in a proper case might be entitled to be made equal with the other shareholders in the distribution, by the payment to them, by the company or the directors, of a sum which would place them upon an equality with the stockholders accepting their shares of these certificates. But, if that should take place, no substantial difference would be produced in the affairs of the company; for it would retain subject to its disposition the land which might be located under the certificates refused by the plaintiffs, and in that manner be able to reimburse itself for what they could recover for their own indemnity. There would in that event be no loss whatever encountered by either side, and no substantial gain experienced by the plaintiffs themselves. There were no facts in the case upon which their action could be maintained, and the court was right in dismissing their complaint; and the judgment should be affirmed.

BRADY, J., concurs. VAN BRUNT, P. J., dissents.