## CRAM *v.* THE UNION BANK.

December, 1868.

Affirming 42 *Barb*. 426.

A general bill of sale, purporting to transfer the assignor's interest in all the assets belonging to his partnership, suffices to pass an item of assets, the existence of which was unknown by the parties.

W. bought all the interest of M. in the property of the firm of R. & M., and then formed a partnership with R., agreeing to put in all the property he received from M. *Held,* that a bank deposit in the name of R. & M., of which both the parties were ignorant at the time, became the partnership property of the new firm, W. & R.

The effect of a bill of sale transferring all the interest of the assignor in partnership property, without anything in its terms to indicate an intent to transfer only such assets as may be enumerated in an inventory, cannot be varied by the mere omission of an item from the inventory, nor by extrinsic evidence of the intention of the parties,—there being no question of fraud or mistake.

Ambrose Cram sued the Union Bank of Rochester, in the supreme court, for the balance of a deposit, which he claimed as assignee of the firm of Whaples & Roach. The title of Whaples & Roach to this balance depended on the copartnership agreement between Whaples & Roach, and a previous purchase by Whaples of an interest in the assets of a former firm.

The facts shown on the trial were that the former firm of Roach & Mattison, mechanics, in Rochester, had a deposit in the defendant's bank on which there was a balance due them of about one hundred and sixty-five dollars. Mattison, by a bill of sale, sold his interest in the firm property, to Whaples.

The bill of sale recited that Mattison together with Roach

had carried on business, &c., and had on hand goods, tools, &c., " and also, notes and bills receivable, book accounts, and claims against different persons to considerable amounts," . . . and witnessed that Mattison sold and conveyed to Whaples, "All his interest in said property and effects, that is to say the one undivided half of all and singular the said goods, working tools, notes and bills receivable, and all other property and valuable thing or things belonging to said firm, of every name and kind."

Other provisions of the bill appear in the opinions. The bill made no reference to an inventory; but at the time of making the bill of sale an inventory was in fact made.

The parties were ignorant of the existence of this balance in bank.

Whaples, having purchased Mattison's interest, immediately entered into partnership with Roach, and put into the business, as he testified, "the property he received from Mattison." A few months after these transactions, Whaples & Roach failed in business, and assigned all the partnership property to plaintiff in trust for their creditors; and he, on the discovery of this bank balance, brought this action.

Roach, who was examined as a witness, on the trial, testified that he did not know where the inventory was. Mattison's testimony was taken by deposition. He testified that he had not the inventory, nor any copy; that none of the inventories made out contained any mention of moneys; that the inventories were supposed and intended by him to contain everything sold or intended to be sold.

These answers were excluded by the court, on plaintiff's objection; and plaintiff recovered judgment.

*The supreme court* were of opinion that, considering that the sale was not of specific articles, but an entire interest in the partnership effects in gross, and no reference to an inventory was made in the bill of sale, the general words of the bill of sale would pass all the assets; and likened the case to a sale of a farm by boundaries containing in gross, an estimated number of acres. Citing *Story Eq. Jur.* § 144 a; Morris Can. Co. *v.* Emmett, 9 *Paige,* 168; Stebbins *v.* Eddy, 4 *Mass.* 414. (Reported in 42 *Barb.* 426.)

Defendants appealed to this court.

*Edward Harris,* attorney for defendants, appellants;—Cited, as to admissibility of extrinsic evidence; Petit *v.* Shepherd, 32 *N. Y.* 97.

*J. C. Cochrane,* attorney for plaintiff, respondent;—Cited *Story Eq. Jur.* §§ 138–151.

HUNT, Ch. J.—The first question that arises upon the motion for the nonsuit is, whether the transfer from Mattison to Whaples covered the demand in question.

The transfer conveyed the one undivided half of all the property or valuable things of the firm of Roach and Mattison, of every name and kind. By the same instrument Whaples undertook to pay the one-half of all the debts of the said firm. An inventory was made, which, it was supposed, contained a statement in substance, both of the assets, and the debts, of the firm. There was, however, no covenant or restriction which limited the effect of the agreement to the securities, or the debts specified in the statement. The sale was of the entire interest in the partnership property. The purchaser was to receive the one undivided half of the firm property, whether more or less, as he was to pay the one-half of its debts, whether they should prove to be larger or smaller than was supposed. If an additional debt against the firm had been presented, it would have been the duty of Whaples to have assumed the place of Mattison with reference to it. So, I cannot doubt that the credit in question, although unknown both to Mattison and Whaples, passed under the transfer described. Couch *v.* Delaplaine, 2 *N. Y.* (2 *Comst.*) 397.

The contract was clear and unambiguous. No parol evidence of the intention of the parties was competent to enlarge or restrict its meaning. *Story on Cont.* § 235. Nor does the question of fraud or mistake arise. Both the buyer and seller are content with the transaction, so far as the case shows, and it is not in the power of strangers to require its rescission or its alteration. *Story Eq. Jur.* § 138, 141.

There was nothing to submit to the jury on this point. It was properly ruled as a question of law.

The defendant further insists that Whaples never transferred

this credit to the new firm of Whaples & Roach, and that there-fore the same never passed under their assignment to the plain-tiff. The latter assignment was of partnership property simply, and if the claim in question had not been made over to the new firm, it certainly would not pass under such an assignment. On this subject Waples testified that after receiving the transfer from Mattison, he immediately entered into copartnership with Mr. Roach, and says, " I put into the business the property I received from Mattison." This evidence was given without ob-jection, and is quite consistent with the written agreement be-tween Roach and Whaples. A transfer of " the property received from Mattison," means a transfer of the whole of such property, and includes all that, in fact or in law, passed, under the as-signment of Mattison.

In his printed argument, the appellant insists that he was at least entitled to have this question submitted to the jury. This is an after thought. The course of the trial and the opinion of the court below give strong reason to believe that the contest on the trial was confined to the effect of the transfer from Mattison, and that it was virtually conceded that the credit in question passed under the partnership assignment, if it was the property of Whaples. The defendant desired a submission to the jury of the question whether it was the intention of Mattison and Whaples that this credit should pass under the sale by the for-mer to the latter, but he made no such request as to the effect of joint assignment by Whaples & Roach. There is no reference to this question, even as a proposition of law, except upon a liberal construction of the request for a nonsuit on the ground " that the money or credit in controversy did not pass to Wha-ples or to the plaintiff." If it did not pass to Whaples, it, of course, never could have reached the plaintiff, who claimed through him, and this language would be satisfied by limiting the objection to the Whaples title alone. Admitting it, how-ever, to have been intended to embrace an allegation that this money or credit was not included in the transfer by Whaples & Roach, as partners, to the plaintiff, the case is not aided. There was clear and undisputed evidence that it was so embraced, and the defendant simply asked a ruling upon the

question as one of law, and did not ask that it should be submitted to the jury.

The principles laid down show that the rulings at the trial were correctly made.

The judgment should be affirmed, with costs.

MILLER, J.—The bill of sale executed by Mattison to Whaples, conveyed and transferred to the latter all the interest of Mattison in the partnership property and effects, being the undivided half of all the property and things in action enumerated in the instrument, and "all other property and valuable thing or things belonging to said firm, of every kind and nature." This language is broad and comprehensive, and clearly embraced the entire interest of Mattison in the copartnership property. It did not limit the effect of the bill of sale, because the parties did not know 'that there was a balance of the price on deposit with the defendant. It would pass by the assignment the same as if this particular item had been known by the parties, and such was clearly their intention. It is not to be assumed that in case of a transfer of property, in which the instrument shows a clear and plain intention to embrace everything owned by the party, that an exception is to be made in favor of any particular kind or species of property. If such were the rule it would not be difficult in many cases to vary and contradict the express terms of a written instrument, in violation of the principle so long and so well established, that parol evidence cannot be introduced to contradict a writing. When such a design is in contemplation, it is the plain duty of the parties to express it in the writing, and in case of a failure to do so, to abide by the consequences of their neglect.

The fact that an inventory was taken of the property, does not, by any means, alter the effect and meaning of the written contract of the parties. Upon sales of this description it is not uncommon to make an inventory of the property intended to be sold, and it is usual for the parties to embrace every article of property known to them; but, unless the contract expressly provided that the inventory is to control, it cannot be so construed; as it is to be supposed, if such were the design, that the bill of sale would have contained phraseology which limited the

sale to the inventory. Such is not the case here; but language of the most general character is employed, so as to comprehend all kind and species of property, without any regard whatever to that which is enumerated in the inventory.

At the time when the bill of sale was made, an inventory of all accounts and bills payable, due from, or owing by this firm, was also made out, that is not referred to in the contract, which provides that Whaples shall pay one-half of all debts and liabilities, and idemnify and save harmless the party of the first part thereupon. If a debt had been left out of the inventory, could it be claimed that Whaples was not liable for this debt? I think not. And for the same reason it cannot now be urged as a defense, that the claim in question did not pass by the bill of sale.

It is evident that in the transaction between the parties, it was contemplated that the purchaser should occupy precisely the same position as the seller had occupied, and that the former should be entitled to all the benefits and advantages arising from the sale, and be liable for all the debts incurred, without regard to the possible contingency of the one or the other exceeding the inventory which had been made of each.

Upon the facts presented in this case there was no question of fact, whether or not it was the intention of the parties to confer title to the money. That intention was entirely apparent from the bill of sale itself; and even if the inventory had been introduced it would not contradict the plain import of that instrument. Nor was it competent, in my opinion, to introduce evidence of conversation had between the parties, to show what in fact was the property of the firm of Whaples & Roach. The instrument showed what was actually transferred, and the law fixed what property belonged to the firm. The evidence offered would have been parol testimony to contradict a writing, and was, therefore, not admissible.

There was no error upon the trial, and the judgment must be affirmed.

A majority of the judges concurred.

Judgment affirmed, with costs.