DANIEL LANNING, Respondent, *v.* BENJAMIN CARPENTER et al., Appellants.

A judgment creditor has a mere general, not a specific lien upon the debtor's real estate; he cannot therefore maintain an action for waste committed thereon.

Where there is a mistake, whether of law or of fact, in reducing an agreement to form or in carrying it into effect, equity will grant relief; but where the parties adopt the security which is to be used to effectuate their intention, if the security should fail, from ignorance of the law, or from any other cause, to operate as the parties intended, the courts cannot substitute any other security for the one adopted.

Parties cannot, by agreement, convert a judgment into a personal mortgage or a bill of sale, or give to it any greater effect than the law gives to it. A parol agreement, therefore, that a judgment shall be a lien upon all the debtor's personal property, will not be enforced in equity, even as against subsequent assignees who assented to the arrangement. (EARL, C.)

It was agreed between a debtor and his creditors that he should give the latter security for their respective claims by confessing judgment, the judgment in favor of one creditor to be first entered and to have priority of lien upon all the property, real and personal, of the debtor. The judgments were entered in Schuyler county, as agreed, all parties supposing that county to be legally organized. It was subsequently decided that Schuyler county was not constitutionally organized, and that the judgment should have been docketed in Steuben. In an action brought by the preferred creditor to establish his equitable lien,—*Held,*

that, as between the parties, the plaintiff was entitled to the same position that he would have occupied had his judgment been docketed in the proper county; but he was not entitled to a lien upon timber cut upon the debtor's real estate after the docketing of the judgment, and transferred by the latter to the other creditors to be applied upon their judgments before the issuing of execution upon plaintiff's judgment. Also *held* (EARL, C.), that plaintiff had no lien upon the debtor's personal property which had been so transferred prior to the issuing of his execution.

(Argued May 19, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the seventh judicial district, affirming a judgment in favor of plaintiff entered upon the decision of the court at Special Term.

This action was brought to establish and enforce an equitable lien upon the property of John Carpenter. On the 14th of July, 1865, John Carpenter was indebted to certain banks in $5,000, secured by the indorsements of defendants, Benjamin Carpenter, Benson Smith, Rice Tompkins and D. J. Sunderlin. He was indebted to plaintiff $450, and was also indebted upon two notes indorsed by Sunderlin $1,000. It was agreed between all the parties that plaintiff should assume and pay the $1,000, and that Carpenter should confess judgment to him for the $1,450, which judgment should be first entered and docketed, and should have the first lien upon all of Carpenter's property, real and personal; that said Carpenter should confess judgment or judgments to defendants, Benjamin Carpenter, Smith and Tompkins for $3,500 to secure them against their indorsements, which said agreement was carried into effect. Plaintiff's judgment was perfected and docketed in Schuyler county clerk's office, July 14, 1865; said defendants' judgment was docketed July 15. On the 18th July, Carpenter executed a bill of sale of a large amount of his personal property to Carpenter, in consideration of $3,500 to be paid by the latter upon the notes, and secure the indorsers upon which the second judgment was given. On the day or two prior to the 4th October, 1855, John Carpenter caused 300 trees to be cut down upon his land, and

upon the 15th turned them out to B. Carpenter, Smith and Tompkins, to indemnify them for their indorsements. On the 14th October plaintiff issued execution upon his judgment, and levied upon the personal property, including the trees so cut down. The property was advertised for sale when a motion was made to set aside and vacate plaintiff's judgment and execution, and proceedings stayed. The order staying was modified so as to allow the sheriff to sell the property and hold the proceeds to abide the event. At the sale defendants Smith and Tompkins purchased for $903, giving their note to the sheriff. Smith had sold $116 of the property levied on prior to the sheriff's sale. The judgment and execution were vacated and set aside by the General Term upon the sole ground that the act of the legislature, 1854, erecting the county of Schuyler, was unconstitutional; some other facts appear in the opinion. The court decided that under the agreement of July 14 the plaintiff obtained an equitable lien upon the property of J. Carpenter, and was entitled to a preference over any subsequent liens acquired by defendants B. Carpenter, Smith and Tompkins, by judgment or otherwise, upon the property levied upon. That the written confession of judgment to plaintiff was in equity entitled to the same force and effect as if entered and docketed in the proper county and execution then issued. That plaintiff was entitled to the proceeds of the sale and judgment was directed against Smith and Tompkins for the amount of their note and interest, $1,347.21; and against Smith for $116 and interest making $173.60 with costs and disbursements. Judgment was accordingly entered. Defendants B. Carpenter and Tompkins appealed.

*Francis Kernan* and *John D. Kernan* for the appellants. If material findings of fact are without evidence to support them, and are duly excepted to, the finding is erroneous as matter of law, and will be reviewed. (*Mason* v. *Lord et al.*, 40 N. Y., 476; *Putnam* v. *Hubbell*, 42 id., 106.) Plaintiff's judgment and execution was void. (20 N. Y., 447.) He

was, then, but a general creditor, and could not attack the bill of sale as fraudulent. (*Hastings* v. *Belknap,* 1 Den., 190; *Andrews* v. *Durant,* 18 N. Y., 500; 32 id., 457; 24 id., 325; 3 Kern., 488; 1 Ed. Ch., 654.) The refusal of a court to find a fact, established by uncontroverted evidence, is error of law. (*Grant* v. *Morse,* 22 N. Y., 323; 40 id., 476.) Equity will not remodel agreements and securities which fail through mistake of law. (Willard's Eq., 47, *et seq. ;* Story's Eq., §§ 64, 69.) Plaintiff elected to pursue his remedy at law; he cannot now resort to equity to obtain the same relief. (23 Barb., 410; 20 N. Y., 447; *Simpson* v. *Hart,* 1 J. Ch., 91; *Sauger* v. *Wood,* 3 J. Ch., 416.) The matter is *res adjudicata.* (23 Barb., 410; 20 N. Y., 447.) Parties cannot, by contracts, give more extensive effect to judgments than that the law gives. (*Knerth* v. *Newcomb,* 22 N. Y., 249, 253.) Defendant's rights attached before the judgment could, by law, become a lien upon personal property. (*Ray* v. *Birdage,* 3 Den., 619; *Roth* v. *Wells,* 29 N. Y., 472.)

*David B. Prosser* for the respondent. The court must be requested to find upon a question of fact before a party can avail himself of the omission or neglect. (*Phelps* v. *Mc-Donald,* 26 N. Y., 82.) Defendant having, in good faith, parted with his money upon the agreement, ought not in equity to be deprived of the benefits of it. (*Hawley* v. *Becker,* 40 N. Y., 169; *Craig* v. *Leslie,* 3 Cranch., 569, 579; *Crabtree* v. *Bramble,* 3 Atk., 687; *Bank of R.* v. *Jones,* 4 N. Y., 497; *White* v. *Carpenter,* 2 Paige, 217; *Parkhurst* v. *Alexander,* 1 J. Ch., 398; 2 McCord, 126; *Jackson* v. *Craft,* 18 J., 110; *Delair* v. *Keenan,* 3 Desauss., 74; *Reid* v. *Simmons,* 2 id., 552; *Matter of Hurd,* 11 Paige, 154; Willard's Eq., 441; Miller's Eq. Mort., 95, margin 100.)

EARL, C. It was agreed that the plaintiff should have a valid judgment against John Carpenter, which should be a lien upon his property, and this lien he could get only by docketing the judgment in the proper county. Both parties

supposing Schuyler county to be legally organized and constituted as such, directed it to be docketed in the clerk's office of that county, and it was thus docketed. It was subsequently ascertained that Schuyler county was not constitutionally organized, and hence that the judgment should have been docketed in the clerk's office of Steuben county. I cannot doubt that the plaintiff is entitled to the same position in this case that he would have occupied if his judgment had been docketed in the latter clerk's office, the proper place. It was agreed that he should have a lien by judgment, properly confessed and docketed; and by mistake, as I think, of law, it was docketed in the wrong place. There was no mistake of law or of fact in making the agreement, but simply a mistake in reducing the agreement to form, or in carrying it into effect. For such a mistake, whether it be of law or of fact, I do not understand equity to refuse relief. But treating the plaintiff as having a judgment properly docketed, July 14th, 1855, I am still unable to see how, upon the facts appearing in this case, this judgment can be sustained. The plaintiff could not claim his equitable lien in this case, if he were a mere general creditor, without any judgment or agreement. He must rely, then, upon his judgment, or upon some agreement, or upon both.

Can he rely upon his judgment alone? In such case he would have no lien upon merely personal property until he should issue execution, and I know of no case which holds that he could sue and recover for waste committed upon the real estate. A judgment creditor has a mere general lien, not a specific one, upon real estate, and hence differs from a mortgagee, who can sue for waste which injures his security. But if the plaintiff, as a judgment creditor, could sue for the waste committed upon the real estate of the judgment debtor, he could recover only by showing that such waste damaged or endangered his judgment security. Here there was no allegation, proof or finding to sustain such a recovery. The plaintiff gains no aid from the fact that he issued execution upon his judgment, because, treating the execution as valid,

most of the property levied on, if not all, was transferred by John Carpenter before the execution was issued; and there is no claim or pretence that this transfer was in fact fraudulent, except as it was a violation of the agreement made upon the 14th day of July, 1855; and the relief to the plaintiff granted by the court below was not based upon the fact that the plaintiff had got any lien by his execution before the transfer, but it was based entirely upon the agreement made July 14th. Hence it is entirely clear that if the plaintiff is obliged to rest his case upon his judgment and execution alone, treating them both as valid, he must fail.

How is the plaintiff aided by the alleged agreement that by the judgment he was to have a first lien upon all John Carpenter's real and personal property? The only agreement alleged, and the only one found, is that the plaintiff was to have his lien through the judgment. The parties adopted the very security which was to be used to effectuate their intention, and even if that security should fail, from ignorance of the law or any other cause, to operate as the parties intended, the courts cannot substitute any other security for the one they adopted; and the plaintiff must take what that security can legally give him and no more. (*Hunt* v. *Rousemaniers' Administrators*, 1 Peters, 13.) It seems to me quite clear that the parties could not by agreement give a judgment any greater effect than the law gives it. They could not convert it into a personal mortgage or bill of sale. Notwithstanding the agreement, it remained a judgment, and nothing more than a judgment.

But aside from the judgment, if John Carpenter had, on the 14th day of July, agreed with the plaintiff that he should have a general lien upon all his personal property, what effect could it have had? The personal property was not delivered; there was no writing, and nothing was paid. How could equity enforce such an agreement? It could not operate as a pledge, as there was no delivery. It could not operate as a parol mortgage, which would have been a conditional sale, as there was no compliance with the statute of frauds. It would

be quite an anomaly for equity to uphold and enforce such a lien, based upon no writing, upon undefined personal property.

But there is still further difficulty as to this alleged lien upon the personal property. Most of it was not in existence at the time of the alleged agreement. The amount of personal property sold by the sheriff was $1,144, after deducting sheriff's fees. Of this sum, as alleged in the complaint, and as proved by uncontradicted evidence, $856.75 was realized by the sale of lumber and logs, cut upon the Kernan lot, after July 14. The lumber and logs were part of the real estate, at that time, and hence were unaffected by the agreement that the plaintiff should have a lien upon John Carpenter's personal property. As to them, if the plaintiff has any remedy at all, it is by assuming that the judgment was a valid lien upon the real estate, and that it was waste to cut down the trees; and that such waste damaged or endangered his judgment security. But for reasons above stated, a recovery cannot be upheld upon this theory.

Again, it was found at Special Term that at the time plaintiff's judgment was confessed, and the alleged agreement was made, it was agreed that the trees might be cut down and manufactured into lumber, and the share thereof belonging to John Carpenter might be applied upon the judgment confessed to defendants Smith, Tompkins and Benjamin Carpenter. All of the lumber and trees, above mentioned, which were sold by the sheriff for $856.75, were cut and manufactured after the said agreement, and the three defendants were endeavoring to apply the proceeds of the lumber upon the judgment held by them, and the trees and lumber had been actually transferred to them by John Carpenter for that purpose. How could such transfer be a fraud upon the plaintiff; and how could he have an equitable lien thereon, superior to the legal and equitable claim of the transferees thereof?

Still further, while John Carpenter and others were cutting down the trees upon the Kernan lot, Kernan appeared there and claimed that they were endangering the security of a mortgage which he held for about the value of the real estate,

and he forbade their cutting or removing the trees until they paid him two payments upon his mortgage, so as to make his mortgage security good; and unless they would do this, he threatened to enjoin them against cutting or removing the logs. Upon the facts as they appear in this case, he could probably have procured such an injunction. Then the three defendants paid to him, by their notes, the sum of about $450 upon his mortgage, and received his assent to remove the logs. After this, the sheriff seized and sold the logs, and, as I understand the evidence, realized more than $500 for them. This sum was included in the amount which the plaintiff was allowed to recover, without any allowance whatever for the sum thus paid by the three defendants. This was manifest error. The sum which the defendants paid Kernan to release his claim upon the logs should have been allowed to them in some form, or adjusted in some way in this action.

For all the reasons above mentioned, I favor a reversal of the judgment below, and a new trial, costs to abide event.

LOTT, Ch. C., and LEONARD, C., concur with EARL, C., that the plaintiff ought not to have recovered the sum of $856.75 mentioned in the above opinion, upon both grounds stated in the opinion. And they express no opinion as to whether the plaintiff could recover for the balance of the personal property.

HUNT and GRAY. CC., not voting.

Judgment reversed.