MARY MARSH, Respondent, *v.* WILLIAM R. McNAIR, Appellant.

In 1869, J. and C., sons of plaintiff, procured policies of insurance upon their lives; the policy upon C.'s life was made payable to plaintiff. These policies remained in the possession of G., who paid the premiums thereon until May 23, 1872, holding them as collateral security for an indebtedness of J. and C.; on that day plaintiff executed to G. an assignment of the policy in which she was interested, absolute in form, for the expressed consideration of $1, "and for other valuable considerations." At the same time in connection with her sons she executed another instrument, by the terms of which they jointly and severally assigned all their rights and interests in the policies to G., in consideration of his crediting C. $353.72, paying a mortgage of $110.46 on property conveyed to him by J. by deed, containing covenants that they were free of incumbrance and indorsing $35.82 on note given by C. G. gave the credits and paid the mortgage specified, and defendant, his assignee, collected the policy on the life of J. Plaintiff claiming that the assignment was in fact given simply as collateral security for an indebtedness of $500, after tender of

Statement of case.

that amount and demand of the moneys collected, brought this action to recover the same. *Held,* that in the absence of any claim of fraud or mutual mistake as to the contents of the assignment, plaintiff was concluded thereby, and oral evidence was incompetent to show that it was executed as collateral security merely.

The rule that a conveyance of real or personal property, absolute in its terms, may be shown by parol to have been intended as a security only, *held* not to apply, as the instrument was not an assignment simply but a contract containing mutual agreements, and so within the rule prohibiting parol evidence to explain, vary or modify it.

(Argued April 23, 1885 ; decided May 5, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made October 31, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought against defendant, an assignee for the benefit of creditors of Chauncey W. Gibson, to have an instrument executed by plaintiff and others which by its terms purported to assign absolutely a policy of insurance on the life of John R. Marsh, made payable to plaintiff, reformed so as to state that it was given as collateral security for an indebtedness of $500, and to recover the moneys collected by defendant on said policies.

The material facts are stated in the opinion.

*E. A. Nash* for appellant. The instrument in question was more than an assignment. It contained the terms and conditions upon which the policies were sold, and cannot be controverted or varied by parol evidence. (1 Greenl. on Ev., §§ 275, 305 ; *McCrea* v. *Purmort,* 16 Wend. 461; *Kellogg* v. *Richards,* 14 id. 117 ; *Goodyear* v. *Ogden,* 4 Hill, 104 ; *Peck* v. *Armstrong,* 38 Barb. 215; *Graves* v. *Friend,* 5 Sandf. 568 ; *Coon* v. *Knapp,* 8 N. Y. 402; *Kenny* v. *Aitken,* 9 Daly, 50 ; *Cocks* v. *Barber,* 49 N. Y. 107; *Halliday* v. *Heart,* 30 id. 474; *Wilson* v. *Dean,* 74 id. 531; *Van Bokkelen* v. *Taylor,* 62 id. 105.)

*J. B. Adams* for respondent. It was entirely competent for the plaintiff to show by parol that the assignment indorsed upon her policy, and executed by her, though absolute in form, was given as security only. (*Matthews* v. *Sheehan*, 69 N. Y. 585; *Fowler* v. *Butterly*, 78 id. 68; *Chapin* v. *Dobson*, id. 74.)

Earl, J. In 1869 the plaintiff and her two sons, John R. and Charles H. Marsh, resided at Avon in this State. At the same time Chauncey W. Gibson resided at Lima in the same county where he carried on the business of a private banker under the name of the Exchange Bank, and he was a local agent of the National Life Insurance Company. In April of that year John R. and Charles H., through Gibson as agent of the company, procured two policies of insurance on their own lives for $5,000 each. The policy on the life of John R. was payable to Charles H. as the assured, and that on the life of Charles H. was payable to Mary Marsh, the plaintiff, as the assured. These policies remained in the possession of Gibson down to the 23d day of May, 1872, and during that time he advanced the money to pay the premiums upon them, John R. and Charles H. giving him their checks upon his bank for the amounts thus advanced; and during that time it appears that he held the policies as collateral security for a large indebtedness due from them to him. On the 23d day of May, 1872, the plaintiff assigned the policy on the life of Charles H., in which she was interested, to Gibson by an assignment, absolute in form, for the expressed consideration of $1, " and for other valuable considerations." On the same day, and at the same place, she, with her two sons, also executed an instrument, of which the following is a copy: " This is to certify that in consideration of crediting C. H. Marsh at the Exchange Bank of Lima $353.72, paying mortgage (on property formerly deeded by J. R. Marsh, in Avon, to C. W. Gibson) given by William F. Russell to C. H. Marsh, $110.46, and indorsing $35.82 upon a note made by C. H. Marsh June 8, 1871, for $300, we jointly and severally sell, assign and transfer all our right, title and interest in two policies, Nos. 4277 and 4287, upon the lives of

Charles H. Marsh and John R. Marsh, issued by the National Life Insurance Company of the United States of America to Chauncey W. Gibson, of Lima, N. Y.

"Dated AVON, N. Y., *May* 23, 1872.

"J. R. MARSH,
"C. H. MARSH,
"MARY MARSH."

In February, 1874, Gibson, having become insolvent, made a general assignment for the benefit of his creditors to the defendant McNair, and assigned that policy to him as a part of his assets. McNair, subsequently, by a suit against the insurance company, recovered the amount insured; and then in the year 1876, the plaintiff claiming that the assignment to Gibson was made merely as collateral security for an indebtedness to him of $500, due to him from her sons, tendered him that amount and demanded the money recovered by him on the policy; and upon his refusal to pay she commenced this action. In her complaint she demanded, besides other relief, judgment against him that the instrument above set forth be reformed, so as to conform to the agreement and intention of the parties thereto, by reciting and stating therein that the same was made and executed as collateral security for the payment to Gibson of the sum of $500, and interest. The defendant in his answer claimed that the assignment was absolute and not given as collateral security. Upon the trial, the plaintiff gave parol evidence, tending to show that the instrument was executed by the plaintiff, upon an assurance that it was only intended as collateral security for $500, and that she signed it for that purpose. At the close of the evidence the defendant moved to dismiss the complaint upon several grounds, one of which was that the plaintiff was concluded by the agreement contained in the assignment executed by her and her two sons, for the reason that the contract made by the writing could not be varied or contradicted by parol evidence. The court denied the motion and defendant's counsel excepted, whereupon the court made findings, among which is the following: "That the

said assignments were and each of them was executed and delivered by the plaintiff, upon the representations and agreements of the said Gibson and of his agents who procured the same to be executed, that the same were intended to be held and used as collateral security to an indebtedness of the said J. R. Marsh and Charles H. Marsh to the said Gibson in the sum of $500, and for no other purpose." And he ordered judgment in favor of the plaintiff for the sum of $6,710.12, which was the balance of the money in defendant's hands received upon the policy, including interest after deducting the $500, and the premium paid by Gibson April 7, 1873.

There was no allegation in the complaint that the plaintiff was induced to execute the instrument by any fraud, or that it was executed by the parties under any mutual mistake of facts; and there was no finding by the trial judge that any fraud was perpetrated upon her, or that the parties labored under any mistake in executing the instrument. The finding was simply that the instrument was intended to be held and used as collateral security. It was not reformed or annulled by the judgment, and the plaintiff was permitted to recover by simply proving by parol that the instrument absolute in form was intended as collateral security; and the sole question for our determination is, whether the parol evidence was competent, and sufficient to show that the instrument was to have force and effect only as collateral security and not as an absolute transfer of the policy.

We are of opinion that the parol evidence was incompetent, and that upon the case as it appears in the record, the plaintiff was not entitled to recover. It is well settled in the law of this State, that an instrument assigning or conveying real or personal property in absolute terms may by parol evidence be shown to have been intended as security only. While this rule is an exception to the general rule of evidence, forbidding the contradiction or explanation of written instruments by parol evidence, it has long been established in the law of this State. It grew up in the equity courts from the efforts of equity judges to prevent forfeitures, to relieve against frauds,

and to enforce the equitable maxim, " once a mortgage always a mortgage." It was supposed that the evidence did not contradict the instrument, but simply showed the purpose for which it was given, and that the instrument, although purposely made absolute, was so made, however, simply for the purpose of giving security to the party to whom it was given, which was not really inconsistent with its form. Hence, it was conceived that parol evidence showing the purpose was not an invasion of the general rule forbidding such evidence to vary, explain or contradict a written instrument. The rule having been established in chancery, was finally, after the Code, and the union of law and equity jurisdiction in the same court, made applicable to cases both in law and in equity. So, if this were simply an absolute assignment of the policy to Gibson, there could be no question under the law of this State, that the plaintiff could be permitted to show by parol that it was intended as collateral security. But here there was more than a simple assignment. Both instruments, executed at the same time, and relating to the same transaction, must be considered together, and hence the effect of both is really to be found in the instrument above set out.

By its terms the precise consideration upon which the policy was assigned is specified, and that is stated to be that Gibson was to credit Charles H. Marsh with the sum of $353.72 at his bank, which sum was in fact an overdraft by Charles at the bank ; and that credit was made. Gibson was also to pay a certain mortgage upon real estate which John R. Marsh had conveyed to him, and, as otherwise appears, which he had conveyed with covenants that the premises were free and clear of incumbrances; and he was to indorse $35.82 upon a note for $300, which he held against Charles H., and that indorsement he made ; and these sums together amounted to the precise sum of $500. This instrument is more than an assignment. It contains what both parties agreed to do. It shows that the assignment was made for the purposes mentioned, and precisely what Gibson was to do in consideration thereof. He became bound to do precisely what was specified for him to do,

and he could have been sued by the assignors for damages if he had failed to perform. Hence the instrument is not a mere asssignment or transfer of the policy. It is a contract in writing within the rule which prohibits parol evidence to explain, vary or contradict such contracts.

It is believed that no case can be found where parol evidence has been received for the purpose of showing that such an instrument was given merely as collateral security and not for the precise purpose mentioned in it. Without commenting upon the authorities the following are ample to show that the evidence was not competent. (1 Greenl. on Ev., § 275; *McCrea* v. *Purmort*, 16 Wend. 461; *Kellogg* v. *Richards*, 14 id. 117; *Goodyear* v. *Ogden*, 4 Hill, 104; *Graves* v. *Friend*, 5 Sandf. 568; *Coon* v. *Knap*, 8 N. Y. 402; *Cocks* v. *Barker*, 49 id. 107; *Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 56 id. 429; *VanBokkelen* v. *Taylor*, 62 id. 105; *Shaw* v. *The Republic L. Ins. Co.*, 69 id. 286; *Cram* v. *Union Bank*, 1 Abb. Ct. App. Dec. 461; *Wilson* v. *Deen*, 74 N. Y. 531; *Eighmie* v. *Taylor*, 98 id. 288.)

If the plaintiff could show that this agreement by the mutual mistake of parties did not express their real intention, she could have it reformed; or if she could show that she was induced to execute it by the fraud of Gibson, she might have it annulled. But in the absence of an allegation and of proof and finding that there was either fraud or mutual mistake, the instrument must have force and effect according to its terms, and cannot be varied, explained or contradicted by parol evidence

It follows from these views that the judgment of the General Term should be reversed and a new trial ordered, costs to abide the event.

All concur, except RUGER, Ch. J., dissenting.

Judgment reversed.