## MORGENSTERN *v.* DAVIS *et al.*

(*Supreme Court, General Term, Fifth Department.* April 16, 1891.)

**1. CONDITIONAL SALE.**
 Plaintiff, at the time of the execution of a note by her, and indorsed by defendants, for the purpose of enabling her to pay an assessment on certain stock held by

her, also executed an instrument under seal, containing an assignment of the stock to defendants, and, after a recital of the indorsement of the note and the purpose thereof, an agreement by plaintiff that, if she did not pay the note at maturity, and defendants did pay it, they should "absolutely own" the stock. *Held*, that the transaction amounted to a sale of the stock on certain conditions, and not a pledge of it as collateral security to indemnify defendants against their indorsement, and that, on failure of plaintiff to pay the note, and on payment thereof by defendants, the latter became absolute owners of the stock.

2. SAME—VALIDITY—CONSIDERATION.

Such agreement was not invalid for want of mutuality, although defendants did not agree to pay the note; they having in fact paid it, and thereby furnished a good consideration for plaintiff's agreement.

Appeal from special term, Erie county.

Action by Caroline E. Morgenstern against Jacob E. Davis and others. Plaintiff appeals from a judgment for defendants, entered on the dismissal of the complaint on trial by the court without a jury.

Argued before DWIGHT, P. J., and MACOMBER, J.

*Giles E. Stilwell*, for appellant.    *Warren F. Miller*, for respondents.

MACOMBER, J.    This action was brought to obtain an accounting and to recover 200 shares of the capital stock of the Main Street & Humboldt Parkway Land Company, or the value of such shares, after deducting the purchase price and subsequent payments of assessments and interest thereon made by the defendants.    The plaintiff and the defendants had been stockholders of this company for some time.    On the 3d day of April, 1886, an assessment of $1,000 was made on the shares of the stock held by the plaintiff, and she, being unable to pay such assessment, was assisted thereto by the defendants, who loaned to her their indorsement upon her promissory note at 60 days, which was discounted, and the proceeds turned over to the plaintiff, and applied to the payment of the assessment against her upon such stock.    The note matured on the 5th day of June, 1886.    It was not paid by the maker,—the plaintiff.    It was protested for non-payment, and the defendants properly charged upon their contract of indorsement, by notice of such non-payment, and they in fact paid the note on the 17th day of June, 1886.    At the time of the execution of the note the following agreement was made by the plaintiff, under seal, and duly acknowledged by her before a notary public: "For value received, I hereby sell, assign, transfer, and set over unto F. C. Longnecker, Jacob Davis, and August Baetzhold all my right, title, and interest in the annexed certificates of stock in the Main Street & Humboldt Parkway Land Company, being certificates Nos. 30, 33, 34, and 35, representing two hundred shares of said stock.    The said parties above named have this day indorsed my note for one thousand dollars, payable in sixty days from this date, for the purpose of enabling me to pay an assessment for that amount on said stock.    Now, I agree that, in case I do not pay said note at maturity, and said Longnecker, Davis, and Baetzhold do pay said note, that they shall absolutely own all my right, title, and interest in said shares of stock.    Said shares of stock have heretofore been assigned to Peter Morgenhagen and the German American Bank, who have been paid in full, and said certificates now belong to me, free from all liens and claims."    At the time that this agreement was made, and at the time of the loaning of their indorsement by the defendants, there was no market value for the stock in question, and its value was purely speculative.    Upon these facts the learned judge at the special term held as conclusions of law that the transaction amounted to a sale of the stock upon certain conditions, and that the title to it vested in the defendants on the failure of the plaintiff to pay the note and on payment thereof by the defendants, and that, by reason of such failure of the plaintiff to pay and by the complete performance by the defendants, the latter became absolute owners of the stock under the contract.    The learned counsel for the appellant urges upon us the argument that the transaction

was but a pledge of the stock as collateral security to indemnify the defend-ants against their indorsement of the paper, and that consequently the plain-tiff is entitled to reclaim the stock on reimbursing the defendants the amount of money which they have expended in the payment of the note and assess-ment made upon the stock. The negotiations were conducted in behalf of the plaintiff by her father, who was acting as her agent. This agent was per-mitted to give testimony, from which it is argued that it was the intention of the parties that the one should turn out and the others should receive the stock as collateral security only, and not under a conditional sale thereof. This evidence, however, fails to show the existence of any matter that would change the plain reading of this contract to something which the plaintiff now finds it convenient to import into it. There is no evidence of a mistake in the preparation of the contract. There is no evidence, or even a charge, of fraud against the defendants. The plaintiff has proceeded, through the tes-timony of her agent, as she has in her complaint, upon the assumption that there was no agreement between the parties of the character set forth above. It is alleged in the complaint that the defendants agreed to receive the stock as collateral security. But there is no evidence in the case to support this allegation, unless, perchance, a loose conversation between the plaintiff's agent and one of the defendants, had some time prior to the execution of the agreement, bears that construction. Moreover, when the plaintiff, who was required by the defendants personally to sign the agreement, although her father claimed to possess full power to act for her in the premises, appeared for the purpose of executing the instrument, her contract was read over to her. She fully understood it; and she signed, sealed, and acknowledged it before a notary public. No word was said to her which would go to show that the transaction was in any way different from what this written paper imports. In the absence, therefore, of deception or of mistake in reducing the real agreement of the parties to writing, this contract cannot be changed from its plain reading into something different; and the plaintiff must accord-ingly be deemed to be bound thereby. *Marsh* v. *McNair*, 99 N. Y. 174, 1 N. E. Rep. 660; *Long* v. *Iron Co.*, 101 N. Y. 638, 4 N. E. Rep. 735, and cases there cited. Nor can the contention be upheld that, inasmuch as the indors-ers did not agree to pay the note, there was no mutuality of contract, and therefore the agreement is not binding. Even though there was no contract outside the indorsement on the part of the indorsers to pay the notes, and even though there was no mutuality in the contract, yet, inasmuch as the in-dorsers did in fact pay the note according to the terms of the indorsement, a good consideration was furnished for the plaintiff's agreement, and the de-fendants may enforce it. *L'Amoreux* v. *Gould*, 7 N. Y. 349. The judgment appealed from should be affirmed, with costs.