(68 App. Div. 346.)

### MILLER v. CARPENTER.

(Supreme Court, Appellate Division, Second Department. January 24, 1902.)

1. WRITTEN CONTRACTS—VARIATION BY PAROL EVIDENCE—ASSIGNMENT OF STOCK.

Where plaintiff assigned certain shares of stock to defendant by an instrument providing that defendant should satisfy certain obligations of plaintiff, and pay him a certain sum in specified installments, the instrument was not a mere assignment, but a contract in writing, so that oral evidence was inadmissible to show that the transfer was intended as security only, and not an absolute sale.

2. SAME—REFORMATION—UNILATERAL MISTAKE.

Where plaintiff executed an instrument assigning shares of stock to defendant absolutely, plaintiff was not entitled to reformation on a showing that it was his intention to make only a conditional assignment for security.

Appeal from special term, Westchester county.

Action by Joseph C. Miller against Reese Carpenter. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Isaac N. Mills, for appellant.

W. J. Townsend, for respondent.

JENKS, J. The plaintiff complains that he assigned certain stock to the defendant as collateral security for loans; that he tendered the debt and asked for the security, but that the defendant refused, saying that the plaintiff did not pledge the stock, but sold it, to him. The plaintiff prays a judgment to restore the stock to him upon his payment of the charges of the defendant, and to enjoin the defendant from dealing with the stock as the owner thereof. The defendant answers that the transaction was a sale of the stock outright. The agreement between the parties was reduced to two writings. The learned special term found that the plaintiff understood that those writings effected an assignment of the stock, that the defendant understood that they effected a sale, that the minds of the parties did not meet, that therefore the transaction was not an absolute sale, and that equity should restore the parties to the position which they occupied prior to the transaction. The judgment awarded the stock to the plaintiff upon his payment to the defendant of the latter's charges thereon, with interest, and granted the injunction.

The plaintiff testified that the agreement between him and the defendant was for a loan, for which the stock was to be assigned as security, and that he executed these writings supposing that they were in furtherance of such agreement. His proposition, then, is

that the minds of the plaintiff and the defendant met on a loan, and
that the transfer of the stock was meant as collateral security there-
for.   And his object of attack is the writings, which are as follows:

(1) "I hereby assign two hundred shares Kensico Cemetery to my wife,
under condition, and two hundred and thirty-two Kensico Cemetery to Reese
Carpenter, upon his paying off loan, Tarrytown Bank, ten thousand dollars,
and securing me for three thousand dollars, to be paid as follows: $1,200 in
Dec., 1899; $1,000 Jan., 1900; and $800 Feb., 1900."
(2) "For value received, I hereby sell, assign, and transfer unto Elizabeth
Miller two hundred shares, and the balance, two hundred and thirty-two
shares, to Reese Carpenter, and appoint the treasurer to transfer the said
shares on the books of the within-named corporation.
"Dated February 12, 1900."

I think that these agreements must be read together as the writ-
ten expression of the transaction.   Harper v. Raymond, 3 Bosw. 29;
Van Hagen v. Van Rensselaer, 18 Johns. 420; Coddington v. Davis,
1 N. Y. 186; Knowles v. Toone, 96 N. Y. 534.   It is to be noted that
by the first writing the plaintiff assigns to the defendant on condi-
tion that he pays off the loan to the Tarrytown Bank of $10,000,
and that he secures to him $3,000, to be paid at certain times stated
therein, and that plaintiff testifies that the defendant did pay $2,400
to him prior to February 27, 1900.   It further appears that the plain-
tiff subsequently tendered the balance alleged to be due thereon,
and that the defendant discharged the debt at the bank, though
that was subsequent to the demand made for a return of the stock
alleged to have been secured thereby.   In Marsh v. McNair, 99 N.
Y. 174, 1 N. E. 660, the plaintiff assigned a policy of insurance to
G., by assignment absolute in form, for $1 and other valuable con-
sideration, and at the same time executed this instrument:

"This is to certify that in consideration of crediting C. H. Marsh, at the
Exchange Bank of Lima, $353.72, paying mortgage (on property formerly
deeded by J. R. Marsh, in Avon, to C. W. Gibson) given by William F.
Russell to C. H. Marsh, $110.46, and indorsing $35.82 upon a note made by
C. H. Marsh, June 8, 1871, for $300, we jointly and severally sell, assign,
and transfer all our right, title, and interest in two policies (Nos. 4,277 and
4,287) upon the lives of Charles H. Marsh and John R. Marsh, issued by the
National Life Insurance Company of the United States of America to Chaun-
cey W. Gibson, of Lima, N. Y."

The court, per Earl, J., said that:   This instrument is more than
an assignment.   It contains what both parties agreed to do.   It
shows that the assignment was made for the purposes mentioned,
and precisely what Gibson was to do in consideration thereof.   He
became bound to do precisely what was specified for him to do,
and he could have been sued by the assignee for damages if he had
failed to perform.   Hence the instrument is not a mere assignment
—a transfer—of the policy.   "It is a contract in writing, which pro-
hibits parol evidence to explain, vary, or contradict such contracts."
I think that upon this authority the instrument in this case must be
held a contract in writing.   The position of the plaintiff then neces-
sarily is that he has executed a contract which does not convey the
true terms of the transaction.   In other words, if the instrument is
a contract in writing, then he has made a mistake of law, in exe-
cuting that which is absolute for that which is conditional.   The

learned special term has not found that he was hoodwinked, or that there was any inequitable dealing on the part of the defendant. Pomeroy, in his Equitable Jurisprudence (section 843), states the rule as follows:

"Where the parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies. Equity will not allow a defense, or grant a reformation or rescission, although one of the parties—and, as many cases hold, both of them—may have mistaken or misconceived its legal meaning, scope, and effect."

After Marsh v. McNair, supra, was heard in the court of appeals, the case was retried; and the appeal therefrom is reported in 48 Hun, 117. The court, per Bradley, J., said:

"The mistake, as such, which permits oral evidence to modify or to reform a written agreement, must be mutual, and in some sense have relation to facts; for, as a general rule, a mere mistake of its legal effect affords no such relief. That is to say, if the written agreement is made as the parties intended, a mistake of its legal import furnishes no ground for the introduction of oral evidence to qualify its terms."—citing authorities.

See, too, Lanning v. Carpenter, 48 N. Y. 408, 412; Trotter v. Brevoort, 60 App. Div. 562, 69 N. Y. Supp. 1028, and authorities cited.

There is no allegation or proof that the written contract was made under a mutual mistake, nor is there any finding of fraud or other inequitable conduct on the part of the defendant. If such testimony could be admissible under the pleadings without amendment, and the learned special term had found that there was an oral contract, which by mutual mistake was not expressed in the written contract, then it might have decreed reformation; or, if the learned special term had found that the defendant, by any inequitable conduct on his part, had brought about the execution of the written contract, then it might have interfered. Haviland v. Willets, 141 N. Y. 35, 50, 35 N. E. 958; Greene v. Smith, 160 N. Y. 533, 55 N. E. 210; Griswold v. Hazard, 141 U. S. 260, 11 Sup. Ct. 972, 999, 35 L. Ed. 678. But in view of the fact that the plaintiff testified that he executed the written contract, and also testified that the minds had previously met on a different oral contract, I think that the learned special term could not, under the findings that the written contract was duly executed and delivered, and that the minds of the parties never met, proceed virtually to reform the contract so as to make it express the intention of the plaintiff alone, or annul it merely upon the principle that the plaintiff could be relieved under a mistake of law. Marsh v. McNair, supra. The oral testimony was admitted without objection or exception. In Marsh v. McNair, 99 N. Y. 180, 1 N. E. 663, the court say that it is believed that there is no case where oral evidence has been received to show that an instrument like that under consideration was given as a collateral security. The rule is elementary that oral evidence to explain, to vary, or to contradict written contracts is inadmissible. Of course, such rule presupposes that such written contract has been established. Pechner v. Insurance Co., 65 N. Y. 195; Jones, Ev. § 437; Allen v.

Konrad, 59 App. Div. 21, 68 N. Y. Supp. 1057; Manufacturing Works v. Macalister, 40 Mich. 84, 87. And oral evidence may be received to destroy or to complete a written instrument. Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Stowell v. Insurance Co., 163 N. Y. 298, 305, 57 N. E. 480; Starkie, Ev. 675.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.