(83 App. Div. 218.)

FARMER v. A. D. FARMER & SON TYPE FOUNDING CO. et al.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. TRANSFER OF STOCK—CONDITIONAL SALE—MORTGAGE—PAROL EVIDENCE.
An owner of stock transferred the same to another, executing an instrument of transfer absolute in its terms, but which recited that a loan made by a third party was being paid simultaneously therewith. At the same time the transferee executed and delivered to the transferror an instrument by which he agreed to transfer to him the same amount of stock in the same company on the payment at a future date of a sum slightly in excess of the consideration named in the other instrument,

and to deposit with another the certificate of stock indorsed in blank until the expiration of such future date. *Held*, that parol testimony was admissible to show whether the transaction was intended to be a conditional sale, or merely a loan secured by the stock.

2. SAME—ESTOPPEL.

The holders of stock, which had been transferred by the original owner by an instrument of sale absolute in its terms, brought an action to assert their right to act as directors, citing the original owner of the shares to appear in the action, and an order was made in their favor, based on the fact that the legal title to the shares was in them. *Held*, that this order did not estop the original owner from afterwards asserting, in a proper action, that the instrument of transfer was in reality a mortgage, and that he had a right to redeem the shares.

Appeal from Special Term, New York County.

Action by William W. Farmer, individually and as executor, against the A. D. Farmer & Son Type Founding Company and others, to have a certain instrument declared a mortgage and to establish plaintiff's right to redeem certain shares of stock. From an interlocutory judgment for plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Charles E. Hughes, for appellants.
Delos McCurdy, for respondent.

PATTERSON, J.   By the interlocutory judgment from which this appeal is taken it was determined that shares of stock of the A. D. Farmer & Son Type Founding Company, which the defendants Blackwell, Morrison, Oakley, and Weatherly claim belong to them in absolute ownership by purchase from one Klaber, are not so owned. It was further adjudged that those shares which were the property of the plaintiff, individually or as executor, are subject to his right of redemption, under agreements made between him and Klaber, to whom they were transferred by him. It was held by the court below that the proper construction of the agreements, in connection with evidence of the surrounding circumstances under which they were made and of the real nature of the transaction which eventuated in their execution, led to the conclusion that the shares were deposited with Klaber as security for a loan, and that a sale thereof was not made by the plaintiff to Klaber. The interlocutory judgment also provides for an accounting. The answers in the case and the evidence show that the defendant Blackwell, who claims to own 1,997 of the 2,000 shares involved, stands in the same relation to the subject-matter of the litigation as Klaber, either by being a principal represented by Klaber, or by taking the shares subject to and with knowledge of the rights existing between the plaintiff and Klaber. The other three individual defendants hold 1 share each, but they also took subject to the plaintiff's rights. The court at Special Term held that "the evidence is strong enough to charge the defendants with the equities existing between the original parties," and we entertain the same view of that evidence.

The material facts as they appear upon the record, are the following: Prior to the 8th day of September, 1898, the plaintiff had

borrowed from the United States Mortgage & Trust Company $75,-
000, and deposited with them, as collateral security for such loan,
stock of the A. D. Farmer & Son Type Founding Company.   At
the date mentioned, the plaintiff made, executed, and delivered to
Klaber an instrument in writing by which, in consideration of the
sum of $50,000, he bargained, sold, assigned, transferred, and set
over to Klaber, his executors, administrators, or assigns, all of his
(the plaintiff's) right, title, and interest in and to 1,997 shares of the
capital stock of the A. D. Farmer & Son Type Founding Company.
That instrument of transfer was absolute in its terms.   It contains
also a representation that the plaintiff was the sole exclusive owner
of the shares, and that they were free and clear of all manner of liens
and incumbrances; and the further representation that the shares
so transferred were a part of 2,000 shares which was the total issue
of the capital stock of the company; and, further, in that instrument
he declared and represented that the indebtedness of $75,000, the
amount of a certain loan made by the United States Mortgage &
Trust Company of New York, "and about being discharged and
paid simultaneously therewith, on such payment, releases the A. D.
Farmer & Son Type Founding Company from any indebtedness
arising by reason of said loan, and the said A. D. Farmer & Son
Type Founding Company is not liable therefor, either in whole or in
part to me or any other person, firm, or corporation whatsoever."

It will thus be seen that in this instrument the 1,997 shares of
stock are identified as the security held by the United States Mort-
gage & Trust Company for the loan of $75,000, and that Klaber was
cognizant of the situation of those shares at the time the instru-
ment was executed and delivered to him.   On the same date, namely
September 8, 1898, and as part of the transaction between the plain-
tiff and himself, Klaber executed and delivered to the plaintiff an in-
strument by which he agreed to sell and deliver to the plaintiff
1,997 shares of the capital stock of the A. D. Farmer & Son Type
Founding Company, provided that the plaintiff should pay to him
(Klaber) the sum of $51,000 on or before the 7th of January, 1899;
time being of the essence of the contract as to such date last men-
tioned.   Klaber further agreed forthwith to deposit with the Amer-
ican Deposit & Loan Company the certificates representing the 1,997
shares of stock, the same being indorsed by him in blank, properly
witnessed, so that they may be transferred by delivery, and on the
stipulation that the same should remain on deposit until the 7th of
January, 1899, and also that if the $51,000 was not paid or tendered
on or before the last-mentioned date, time being of the essence of
the contract in that particular, the American Deposit & Loan Com-
pany should thereupon on the day following deliver to Klaber or his
assigns the certificates for such shares, but that, if the plaintiff paid
the sum of $51,000, as required by the instrument, on or before the
7th day of January, then the American Deposit & Loan Company
should deliver the said certificates to Farmer, it being understood
and agreed that the contract was a personal one between the parties
thereto.   There was added to that agreement a clause that, upon
the demand of the plaintiff, the time within which to exercise the op-

tion therein given should be extended two months from January 8, 1899. The certificates of stock, under the arrangement entered into by these instruments, were delivered to the depositary mentioned and the $51,000 (the whole, we will assume) was paid to the plaintiff.

But the transaction between the plaintiff and Klaber with respect to the 1,997 shares did not terminate at that point. On the 30th of September, 1898, an additional sum of $10,000 was loaned by or through Klaber to the plaintiff; such loan purporting to be made on the option given by Klaber to Farmer in the instrument hereinbefore referred to. The plaintiff gave his note for that loan, and Klaber entered into a written agreement which recites that Klaber is the owner of the 1,997 shares of stock, and also refers to the instrument by which the option was given to the plaintiff to repossess himself of the shares by paying $51,000, and the desire of the plaintiff to obtain a loan of $10,000, which Klaber was willing to make upon the security of the option agreement, and not otherwise; and after such recitals Klaber stipulates to loan $10,000 to the plaintiff, the latter agreeing to repay the same, with lawful interest at 6 per cent. per annum, on or before the 7th of March, 1899, time being of the essence of the contract, and then the agreement provides as follows:

"And the party of the first part [the plaintiff] agrees to bind himself that in case he shall fail to pay the said sum of $10,000 the amount of said loan, together with the lawful interest thereon as aforesaid, on or before March 7, 1899, time being of the essence of this contract in such particular, that then and in such case the party of the first part does hereby release and forever discharge the said party of the second part and his legal representatives of and from the terms and conditions of said option agreement of September 8, 1898, and the said option agreement shall thereupon and in such case become null, void, and of no effect; otherwise, upon the repayment of the said loan and interest, the said option agreement shall remain in full force and effect."

Money was paid by Klaber to the plaintiff in accordance with the stipulation of the last-mentioned agreement, and we will assume, for the purposes of the case, that it was the sum of $10,000. Further, and on the 27th day of October, 1898, the plaintiff borrowed $7,500 more, and gave his promissory note to Klaber for that amount, and received from him an agreement of the same purport as that executed at the time of the advance of $10,000, and containing stipulations of the same character. Still further, and on the 4th day of November, 1898, an additional sum of $7,500 was borrowed by the plaintiff, and he made his promissory note to Klaber for that amount, and at the same time an agreement was executed of the same character and to the same effect as those made and delivered on the prior advances of $10,000 and $7,500, as above mentioned.

Thus it will be seen that the amount of money received by the plaintiff from or through Klaber was the exact amount of the loan for which the plaintiff had pledged these shares of stock to the United States Mortgage & Trust Company, of which loan Klaber had full knowledge, and hence was cognizant of the situation of the shares at the time the agreements between himself and the plaintiff were executed. The matter in controversy relates to the true nature of the transaction between those parties. Was it a conditional sale

of the shares of stock to Klaber, or to some one represented by him? or was it merely an advance of money by or through Klaber, put by written instruments in the form of a sale, but which instruments a court of equity will make operative only in accordance with the real intention of the parties thereto? If it were the latter, the right to redeem inheres in the plaintiff.

The case before us is not one depending upon the reformation of a contract on the ground of fraud or of mutual mistake. It is the plain case of an inquiry into the real nature of the transaction, as constituting a sale or a loan secured by a mortgage. The first instrument executed between the parties is in form an absolute transfer. The second is, by the proper construction to be given to it in connection with the proof adduced, an instrument of defeasance. The well-recognized rule in equity applies. Horn v. Keteltas, 46 N. Y. 605; Hughes v. Harlam, 166 N. Y. 427, 60 N. E. 22; Blake v. Corbett, 120 N. Y. 327, 24 N. E. 477; Macauley v. Smith, 132 N. Y. 524, 30 N. E. 997. Oral evidence being admissible to show the true nature of the transaction, not to annul the contract between the parties, but to determine what it was and enforce it according to the intention of the parties, that adduced in this case justified the conclusion reached by the justice at Special Term. Upon the initiation of the transaction, it was thoroughly understood by Klaber that the plaintiff was applying for a loan. The witness O'Brien testifies to the declaration of Klaber that he understood the application was for a loan, and that "it could not be anything but a loan"; and the uncontradicted testimony of the plaintiff is positive upon that subject. No evidence was given on the trial on behalf of the defendants (appellants), who stand upon the agreements and what they contend to be their legal rights under them. They urge that the option clause in one of the September 8th instruments, in connection with the other instrument executed on that date, constitute a contract imposing mutual obligations and defining the nature and purpose of the transaction, and that oral evidence was inadmissible and ineffectual to vary the terms of the same. In enforcement of this contention, they rely upon the class of cases in which courts of equity have refused to interfere to vary the terms of instruments, where upon construction it is manifest a mortgage or security was not intended. Such are the cases of Robinson v. Cropsey, 2 Edw. Ch. 138; Baker v. Thrasher, 4 Denio, 493; Macaulay v. Porter, 71 N. Y. 173; Randall v. Sanders, 87 N. Y. 578; Marsh v. McNair, 99 N. Y. 174, 1 N. E. 660; Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Miller v. Carpenter, 68 App. Div. 346, 74 N. Y. Supp. 231.

Those cases proceed upon the theory that where parties have entered into a contract imposing upon them mutual obligations, and the instrument cannot be otherwise construed than as intended for the specific purpose stated in it, it is not to be varied by parol evidence which would change the nature of the contract. If, in the case at bar, Klaber had bound himself to do something other or more than retransfer the shares, or restore them to the possession of the plaintiff, upon the payment of a sum of money, then the construction of the instruments might be that they contained a contract

which could not be varied by parol evidence. In Marsh v. McNair, 99 N. Y. 174, 1 N. E. 660, certain policies of insurance were assigned, and it was claimed that the assignment was made merely as security; but there, according to the terms of the agreement, the assignee was to credit the assignor with a sum of money, was to pay a mortgage upon real estate of the assignor which had been conveyed to him, was to indorse a payment upon a note, and do certain other things, for the failure to do which an action could have been maintained against him; and it was held that the instrument was more than an assignment, and was a contract that could not be varied by parol evidence. Miller v. Carpenter, 68 App. Div. 346, 74 N. Y. Supp. 231, was a case of the same character, in which, by contract, the assignee of shares of stock was bound to do certain specific things beyond receiving money upon an ostensible resale of transferred property. And so, running through the cases cited, it appears from a construction of the instruments that there were elements entering into them other than a mere transaction of the transfer of the property and stipulations for its return on payment of sums of money. This case must depend upon the nature of the transaction of September 8th. Taking the two instruments together, we regard the one providing for the payment of the $51,000 as being in the nature of a defeasance; and the parol evidence, which we deem to have been competent, fully establishes the character of the transaction, and authorized the judgment allowing the plaintiff to redeem.

The evidence sufficiently shows that the defendant Blackwell was bound by the contracts of Klaber, and that he took the assignment of the 1,997 shares subject to the relations established between Klaber and the plaintiff. He alleges in his answer that he took them from Klaber subject to the option. He knew that the transaction between Klaber and the plaintiff was a loan. That is shown in the testimony of Mr. Hendricks. The subsequent advances of money, stated to have been made upon the option contained in the agreement of September 8th, of which Blackwell had knowledge, indicate that the original transaction was a loan of money, and not a conditional sale. As said in Hughes v. Harlam, supra:

"It is often difficult to determine whether a particular transaction constitutes a mortgage or a conditional sale, in which the right is reserved in the grantor to repurchase or redeem the property at a stipulated price within a given time. In all such cases the only safe criterion by which to determine the question is the intention of the parties, to be ascertained either from the terms of the written contract or, in proper cases, from that instrument considered in connection with the circumstances attending its making."

Here, we think, evidence was admissible of those circumstances, and that the clear intention of the parties was as we have stated it to be.

It is earnestly urged, however, by the appellants, that the respondent is estopped by record from enforcing a right of redemption, and that that estoppel arises out of the terms of an order of this court, made in a proceeding which, it is asserted, determines the question of title and ownership of the shares. It appears that, after the defendants Blackwell, Morrison, and Oakley obtained posses-

sion of the stock, a meeting of stockholders of the corporation was held for the election of officers. Thereafter those defendants instituted a proceeding in the Supreme Court, under section 27 of the stock corporation law (Laws 1892, p. 1831, c. 688), to determine their right to act as directors of the corporation; they alleging that they were duly elected. The plaintiff was cited to appear in that matter, and, after hearing the parties, it was ordered and adjudged that the three defendants named were duly elected directors, and their rights were adjudged, and Farmer and others were directed to turn over the corporate property to the persons so elected. Their right to act as directors depended upon their ownership of stock. It is now urged on behalf of the appellants that the order entered in that proceeding is effectual as to all matters within its scope, and that one of such matters was the establishment of their right to the shares. We do not regard that order as operating as an adjudication conclusive upon the plaintiff's rights as they are asserted in this action. All that there was before the court in that proceeding was the right of those having the legal title to the stock, and that view was taken by the Supreme Court in deciding a motion made by the plaintiff to vacate and set aside the order made on the original application of the three defendants under the stock corporation law above referred to. In deciding the motion to vacate, as appears from the order entered upon that decision, the court said:

"In the present case, the transfer upon the books was founded upon an actual transfer of the title out of the moving party; and to go further, and inquire whether that transfer should be set aside or reformed, to express the true agreement of the parties, is the province of the court only in an action brought for the appropriate relief, and not in a summary proceeding of this character. Re Argus, 138 N. Y. 557 [34 N. E. 388]. The inexcusable neglect, from which the moving party seeks to be relieved, is asserted to be his failure to present his equitable rights to the court; but the presentation could not aid him, in view of the admitted character of the transaction."

The plaintiff in that proceeding could not assert his rights as they are involved in this action. They were not embraced in its scope. We do not think the order relied upon by the appellants is an adjudication of those rights.

The judgment should be affirmed, with costs. All concur.